**FIFTH THIRD BANK, f.k.a. Fifth Third Union Trust Company,**

v.

**FIFTH THIRD BANK, Exr.; Landt et al., Appellants;
First Interstate Bank of Denver, Appellee.**

[Cite as *Fifth Third Bank v. Fifth Third Bank* (1991), 77 Ohio App.3d 339.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900565.

Decided Sept. 25, 1991.

*Graydon, Head & Ritchey* and *Stephen L. Black,* for appellants.

*Dinsmore & Shohl* and *Wiley Dinsmore,* for appellee First Interstate Bank of Denver.

*Per Curiam.*

This appeal derives from an action brought in probate court to construe the will of Helen Meis. Helen Meis died on November 4, 1954. After a contest of the will by her daughter, Natalie Meis Wilhelm, was resolved by a settlement agreement adopted by the court, the will was sustained in probate in 1956. Over three decades later, the Fifth Third Bank, acting in its capacity as trustee under Item VII of the will, requested the probate court to determine the proper distribution of the remainder interest in the trust following the death of Natalie as the life income beneficiary. First Interstate Bank of Denver ("First Interstate"), as the personal representative of the estate of Natalie, claimed the remainder pursuant to the 1956 settlement agreement. The appellants claimed the remainder of the Item VII trust under a construction of the express terms of the will.

Motions for summary judgment were filed by both First Interstate and the appellants. The probate court granted the former's and denied the latter's. An entry was journalized directing payment of specific bequests to certain legatees and the balance of the Item VII trust (in excess of $1 million) to First Interstate pursuant to the settlement agreement.

The appellants challenge the probate court's order on the basis of two assignments of error. In the first assignment of error they attack the validity of the settlement agreement underlying First Interstate's claim to the remainder interest. In their second assignment they contend that First Interstate's cross-motion for summary judgment was not "ripe for adjudication." Neither assignment has merit and we affirm the judgment of the probate court.

I

The settlement agreement underlying First Interstate's claim to the residuary estate resulted from a contest of the Helen Meis will in 1956. The settlement was entered into between Dr. Harry Landt and the testator's daughter, Natalie Meis Wilhelm. In Item VI of the Helen Meis will, Landt was bequeathed $30,000 in trust, to be divided equally for the benefit of his

two children, appellants Stephany Landt and Alice Jean Weicher (nee Landt). Under the terms of Item VII of the will, the residuary estate of a separate trust established for the benefit of Natalie was to be added to the trust estate created under Item VI for the benefit of Dr. Landt's two daughters in the event that Natalie died without issue. Natalie instituted the will contest. As a result of the settlement agreement, Dr. Landt agreed that only one half of the Item VII residuary estate would "pour over" into the Item VI trusts if Natalie died before either or both of his daughters attained age twenty-five. Furthermore, Dr. Landt waived all interest he had, individually and as Item VI trustee, in the conditional remainder of the Item VII trust if Natalie lived beyond his youngest daughter's twenty-fifth birthday.

The settlement agreement was entered into on or about August 7, 1956. Final distribution of the Item VI trust was made on February 18, 1966, to appellant Alice Jean Landt. Stephany Landt had earlier received her final distribution on November 30, 1964.

Natalie Meis Wilhelm died without issue on June 11, 1989, and in her will named First Interstate as her executor.

## II

The appellants assert in their first assignment of error that the trial court erred in granting First Interstate's cross-motion for summary judgment, which was premised, in part, on the validity of the 1956 settlement agreement. The appellants challenge the enforceability of the settlement agreement on several grounds. First, they contend that since both Stephany and Alice Jean Landt were minors at the time the agreement was entered into, the probate court in 1956 should have appointed guardians *ad litem* to protect their interests. Second, they assert that the settlement agreement was entered into *ex parte* vis-a-vis the minor daughters and without full disclosure to the court of all the relevant facts. Third, they argue that the settlement agreement is invalid because it defeats the intent of the testator that her son-in-law not be among the potential heirs of the estate under Item VII. Finally, they contend that the doctrine of laches does not bar their challenge to the settlement agreement over three decades from the date it received court approval.[1]

---

1. In its appellate brief, First Interstate notes that "the Vietnam War, disco and the Reagan Era came and went" before the appellants asserted their interest in the residuary estate. Although First Interstate also asserts that the probate judge "charged appellants with laches in raising their claim," this is not entirely accurate as the probate judge in his findings of fact and conclusions of law only observed that "some 28 years" had passed between the time Alice Jean Landt had come of age and her questioning of the settlement agreement. As we hold that the appellants' claim to the residuary estate fails on the merits, and because First

■ Beneficiaries of a testamentary trust, such as the Landt daughters, are not necessary parties to a will-contest action. R.C. 2107.73 (former R.C. 2741.02); *Elsen v. Hughes* (1949), 87 Ohio App. 413, 43 O.O. 168, 94 N.E.2d 567. In *Elsen,* two minor beneficiaries of a testamentary trust sought to void a judgment setting aside the will creating the trust because they had not been made parties to the will contest. Citing 1 Perry on Trusts (7 Ed.1929), 567–568, this court held that the minor beneficiaries, although they may have been proper parties to the will contest, were not necessary parties and therefore their absence did not prevent the court from entertaining the will contest. *Id.* at 415–416, 43 O.O. at 169, 94 N.E.2d at 568. We also observed in *Elsen* that, if the trustee properly failed to defend the action against the trust, then the remedy of the beneficiaries would be against the trustee "and not by attacking the title of transferees who took title in reliance upon the validity of the judgment." *Id.* at 416, 43 O.O. at 169, 94 N.E.2d at 568.

While *Elsen* makes clear that beneficiaries of a testamentary trust are not necessary parties in an action to contest the will, *Elsen* did not address the distinct issue of the power of a testamentary trustee to settle a will contest by altering the terms of the trust. The fact that the Landt daughters were not necessary parties to the will contest does not, *ipso facto*, give the trustee carte blanche to alter the trust in any manner that will bring about a settlement of the action, regardless of the effect on the trust res or the interests of the beneficiaries. The trustee's authority to alter the terms of the trust must either derive from the express terms of the creating instrument, arise inferentially from those terms that are there, or be found among the trustee's implied powers to settle controversies with adverse claimants of the trust estate. See III Scott on Trusts (4 Ed.1988) 6–11, Section 186; *Madden v. Shallenberger* (1929), 121 Ohio St. 401, 169 N.E. 450.

■ Under the terms of Item VII of the will, upon the death of Natalie Meis Wilhelm without issue, the remainder "poured over" into the trust previously established for the benefit of Dr. Landt's two daughters under Item VI. The powers of Dr. Landt as trustee of the Item VI trust are enumerated in paragraph I of Item VI. This paragraph states in its entirety:

"My said trustee shall have full authority to sell, or otherwise dispose of any of my property at such prices and upon such terms as he sees fit, without the prior approval or ratification of any Court; and to invest any funds coming into his hands as trustee in such manner as he sees fit, without reference to the legal restrictions upon investments by fiduciaries."

---

Interstate did not affirmatively plead laches below as required by Civ.R. 8(C), we express no opinion on the applicability of the laches doctrine in the case *sub judice.*

As the above language demonstrates, if and when the residual estate under Item VII poured over into the Item VI trust, Dr. Landt would have had the authority "to sell, *or otherwise dispose* of any of [the property] at such prices and upon such terms as he [saw] fit, without the prior approval or ratification of any Court." (Emphasis added.) Patently, therefore, the testator intended to confer upon Dr. Landt broad authority to dispose of any potential assets of the trust as he saw fit without court approval.

Moreover, the Ohio Supreme Court has recognized that a testamentary trustee, in a will-contest action, has implicit authority to do that which the exigencies require to preserve the trust, "even to the extent of making immediate payment * * * of a portion of the corpus of the trust estate." *Madden, supra,* 121 Ohio St. at 408, 169 N.E. at 452. The justification for such authority rests upon the possibility that the will creating the trust will be set aside, and to avoid such a "disaster to the trust" the trustee has the power and duty to offer as settlement alteration of the terms of the trust. *Id.* The only limitation on the trustee's authority is that he must act prudently and cannot use such a settlement to add to the trust estate of the beneficiaries anything which the testator had not conferred upon them. *Id.* at 409, 169 N.E. at 452.

We conclude, therefore, that from the language of the will, and by implication, Dr. Landt was authorized to take the action that he did to preserve the Item VI trust. Furthermore, we hold that his authority to enter into the agreement did not require approval of the trust beneficiaries who were not necessary parties to the will contest. We find no basis to conclude that the court that approved the settlement was not apprised of all the necessary facts or that Dr. Landt's interests were in conflict with those of his two daughters. We also reject the contention that the settlement agreement defeated the testator's intent that the Item VII trust never be exposed to a claim that the testator's son-in-law was entitled to a share. It was clearly the testator's intent to establish the Item VI trust for the benefit of the Landt daughters, and the settlement agreement saw to it that this intent was not defeated by a complete setting aside of the will.

We hold, therefore, that the probate court did not err by granting First Interstate's cross-motion for summary judgment based on the settlement agreement, as the settlement agreement was enforceable as a matter of law and precluded judgment in favor of the appellants since they were bound by its terms. The appellants' first assignment of error is overruled.[2]

---

2. We note that, even had we agreed with the appellants that the settlement agreement was unenforceable against them, another hurdle remained between them and the residuary

### III

In their second assignment of error the appellants assert that First Interstate's cross-motion for summary judgment was not ripe for adjudication since it was not filed at least fourteen days before a hearing on the matter. See Civ.R. 56(C). The assignment is overruled because the appellants waived the issue by failing to raise it below, see *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 70 O.O.2d 123, 322 N.E.2d 629, and because the appellants have failed to demonstrate any prejudice on a record that establishes that they submitted a memorandum in opposition to First Interstate's cross-motion.

Accordingly, the trial court's judgment is affirmed.

*Judgment affirmed.*

GORMAN, P.J., SHANNON and DOAN, JJ., concur.

estate: the probate court in 1956 construed language in the will as conditioning their interests upon Natalie Meis Wilhelm dying without issue before both Landt daughters reached the age of twenty-five. The failure of this triggering event to occur could have been another basis to find that the appellants were not entitled to the residuary estate. The probate court's earlier construction of the will, although argued as a ground for summary judgment in its favor by First Interstate, was not relied upon by the probate court and the validity of this construction of the will has not been made the subject of this appeal.