[No. 12642-1-III.   Division Three.   April 5, 1994.]

CHARLES S. SHERRELL, ET AL, *Respondents*, v. JACK
SELFORS, JR., ET AL, *Appellants*.

*David H. Browitt,* for appellants.

*F. Steven Lathrop* and *Lathrop & Winbauer,* for respondents.

THOMPSON, C.J. — Jack and Jane Doe Selfors, Jr., and Jack and Jane Doe Selfors, Sr.,[1] appeal a treble damage judgment entered against them for willfully and carelessly cutting trees belonging to Charles and Roxanna Sherrell. They contend the number of trees cut was not established with certainty, the cut trees were improperly valued, and damages should not have been trebled.[2] We affirm.

Sherrells purchased lot 23 in Pineloch Sun Development, Kittitas County, in 1982 and built a residence on it. In 1990,

---

[1] In this opinion Defendants are referred to collectively as Selfors.

[2] Damages were trebled pursuant to RCW 64.12.030, which provides:

"Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the person committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be."

Jack Selfors, Jr., purchased lot 22 next to Sherrells. He informally gifted an interest in the lot to his father, Jack Selfors, Sr., who began preliminary steps to construct a cabin.

On or about October 28, 1990, the elder Selfors (hereinafter Mr. Selfors) cut down several trees and shrubs on lot 22 as well as trees and shrubs on Sherrells' lot. Selfors did not survey the property nor speak with Sherrells prior to cutting. Mr. Selfors did, however, speak with the manager of Pineloch Sun Development and they walked the area of the property line in an attempt to locate the boundary. Apparently, in determining which trees and shrubs to cut, Mr. Selfors relied on the manager's statement that the property line between lots 22 and 23 "ran from the approximate location of the downhill property corner to an electrical grounding rod some forty feet inside the plaintiff's property . . .". In fact, the electrical grounding rod bore no reasonable relationship to the boundary.

In a bench trial, the court found the property line between Sherrells' lot and Selfors' lot was marked by boundary stakes and rebar pins which could easily be found. It also determined the trees and shrubs cut by Selfors provided a noise and dust barrier as well as a visual screen. The cost of replacing 14 trees and shrubs was established by expert testimony. Finding no mitigating circumstances under RCW 64.12.040,[3] the trial court trebled replacement costs and entered judgment in favor of Sherrells for $64,500 plus court costs and fees.

CHALLENGED FINDINGS

■ Sherrells contend because Selfors failed to assign error to specific findings in their opening brief or set out any

---

[3]RCW 64.12.040 provides:

"If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodlands, for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall only be given for single damages."

portions of any challenged finding as required by RAP 10.3(g) and 10.4(c), the claimed error should not be considered on appeal. *Thomas v. French*, 99 Wn.2d 95, 100, 659 P.2d 1097 (1983). However, a less strict approach is applied if the claimed error is included in an assignment of error or is clearly disclosed in the associated issues pertaining thereto. *In re Marriage of Stern*, 57 Wn. App. 707, 789 P.2d 807, *review denied*, 115 Wn.2d 1013 (1990).

It was clear from the associated issues in the opening brief that Selfors were challenging findings of fact 1.3 and 1.6. Therefore, these findings will be reviewed. Conversely, findings of fact 1.4 and 1.5 are challenged only in Selfors' reply brief. Since Sherrells did not have an opportunity to respond to these new challenges, findings 1.4 and 1.5 are verities on appeal.[4] *French*, at 100.

Finding of fact 1.3 states:

> On or about October 28, 1990, defendant Jack Selfors, Sr. cut down trees and shrubs on both Lots 22 and 23 for the apparent purpose of clearing Lot 22. Several trees were cut on plaintiff's property, and there remain seven stumps ranging in size from 8 to 26 inches in diameter. At least 12 trees seven inches in diameter and larger, several other trees between four and seven inches in diameter, and some shrubbery [were] cut on plaintiff's property. Defendant Jack Selfors, Sr. admits that he cut these trees and shrubs.

Selfors contend the evidence only established the cutting of seven trees. We disagree.

Mr. Sherrell testified that 21 trees having a diameter of 4 inches to 27 inches were cut from his property. Another Pineloch Sun property owner testified the area where the trees were cut was forested, had undergrowth, and 10 to 20 trees probably had been cut. A member of the Pineloch Sun Architectural Committee also viewed the property just after the trees were cut down, but was unable to say how many trees were lying on the ground. The former manager of Pineloch testified he thought there were seven or eight small- to medium-sized trees where the cutting took place.

---

[4]We note, however, that in reviewing the evidence pertaining to findings 1.3 and 1.6, both findings are supported by substantial evidence.

The owner of Central Nursery and Landscape testified he counted 15 to 18 stumps when he visited the property to give a bid on tree replacement.

After the trees were cut, Selfors had tree limbs removed from their property and Sherrells'. There was contradictory testimony as to whether stumps were removed from Sherrells' property at the same time. Mr. Selfors and his backhoe operator testified no stumps were removed from Sherrells' lot.

A videotape taken by Mr. Sherrell of the area where the trees and shrubs were cut was admitted as exhibit 34. It showed the area shortly after the trees were cut. In addition, a videotape taken by Mr. Sherrell after Selfors allegedly "cleaned up" the property was admitted along with photographs of the cut area.

After hearing testimony and reviewing all other evidence, the trial court made a personal inspection of the property. Seven stumps were located, but it was clear that "some unearthing" had taken place. The court stated in its memorandum decision:

> In reviewing the evidence, including the videotape, (exhibit 34) and the still photographs, especially exhibit 15, and after having reviewed the property in person, this court finds that there were more than seven trees but less than 21. The witnesses who testified for the plaintiff were familiar with the area and Lot 23 in particular, and all estimated that there were between 10 and 20 trees removed. Exhibit 34 moves around too much to accurately count the trees without running the risk of counting the same tree from a different angle. Nevertheless, the court is confident and finds that there were at least 12 trees of a size of seven inches or greater in diameter and that there were several other trees between four and seven inches.

The evidence was conflicting as to how many trees were cut. According to the testimony, there were at least 7, and there could have been as many as 21. In any case, the court's view, the videotape, the photographs, and the testimony provided substantial evidence to support finding of fact 1.3. Conflicting evidence is substantial if that evidence reasonably substantiates the finding even though there are

other reasonable interpretations. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 713, 732 P.2d 974 (1987). *See also Thomas v. Ruddell Lease-Sales, Inc.*, 43 Wn. App. 208, 212, 716 P.2d 911 (1986) (the appellate court "need determine only whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict").

The trial court found the damage to Sherrells' property could be restored by planting 14 trees and some shrubbery, and the cost of doing so was $21,500. Finding of fact 1.6 states in pertinent part:

> As depicted on Exhibit 45, trees number 5, 14, 9, 4, 3, 17, and 19 were cut and will cost $13,300.00 to replace. In addition, three large Douglas fir, two medium Douglas fir, and two small Ponderosa pine were cut and will cost $6,500.00 to replace. Two hundred dollars ($200.00) will cover the cost of replacing the brush and shrubs removed.

There is substantial, competent evidence to support the finding that 14 trees and shrubs were needed to replace the cut trees. The finding is not inconsistent with finding 1.3 and it is supported by substantial evidence. Further, the cost of replacement was supported by expert testimony. Damages must be proved with reasonable certainty or be supported by competent evidence in the record. *Iverson v. Marine Bancorporation*, 86 Wn.2d 562, 546 P.2d 454 (1976). Recovery should not be denied because the extent or amount of damages cannot be ascertained with mathematical precision, provided the evidence is sufficient to afford a reasonable basis for estimating losses. *Jacqueline's Wash., Inc. v. Mercantile Stores Co.*, 80 Wn.2d 784, 786, 498 P.2d 870 (1972).

### VALUATION

Selfors contend the proper measure of valuing cut trees is not based on restoration or replacement costs when they are not "ornamental" and are not being grown for timber or other productive purposes. *Tatum v. R&R Cable, Inc.*, 30 Wn. App. 580, 636 P.2d 508 (1981), *review denied*, 97 Wn.2d 1007 (1982); *Kroulik v. Knuppel*, 634 P.2d 1027 (Colo. Ct. App. 1981); *Kapcsos v. Hammond*, 13 Ohio App. 3d 140, 468

N.E.2d 325 (1983). They contend Sherrells' trees were not ornamental trees, nor were they being grown for timber or other productive purposes. According to Selfors, damages were limited to stumpage value because a greater fair market value was not proved. *Bremerton Cent. Lions Club, Inc. v. Manke Lumber Co.*, 25 Wn. App. 1, 7, 604 P.2d 1325 (1979), *review denied*, 93 Wn.2d 1016 (1980).

Sherrells contend restorative value is the proper measure of damage because it was the only measure which could begin to restore them to the condition they were in before the unlawful cutting. They cite *Tatum*, at 584, *Butler v. Anderson*, 71 Wn.2d 60, 426 P.2d 467 (1967), and *Sparks v. Douglas Cy.*, 39 Wn. App. 714, 720, 695 P.2d 588 (1985). Further, Sherrells contend their trees were ornamental trees subject to the same valuation method as in *Tatum*.

RCW 64.12.030 applies to any "tree", "timber" and "shrub". When the damage is to "timber", the landowner is generally compensated based on the "stumpage value" of the severed trees, together with other damages that are a normal consequence of the logging operation. *see, e.g., Henriksen v. Lyons*, 33 Wn. App. 123, 127, 652 P.2d 18 (1982), *review denied*, 99 Wn.2d 1001 (1983); *Bremerton Central Lions Club, Inc.*, at 7. When the damage is to a "productive tree", its production value rather than its stumpage value is the measure of damages. *See, e.g., Sparks*, at 720 (measure is lost production value of fruit trees while replacement trees are maturing less production costs). When the damage is to Christmas trees intended to be sold at market, lost profits, not stumpage value, is an appropriate measure of damages. *Pearce v. G.R. Kirk Co.*, 92 Wn.2d 869, 873-74, 602 P.2d 357 (1979).

■ In addition to damages based on stumpage value, production value, and lost profits, in the appropriate case damages may be based on the difference in the value of the land before and immediately after the cutting. *See, e.g., Grays Harbor Cy. v. Bay City Lumber Co.*, 47 Wn.2d 879, 289 P.2d 975 (1955); *Tronsrud v. Puget Sound Traction, Light & Power Co.*, 91 Wash. 660, 158 P. 348 (1916). When trees are cut from

recreational and residential property, damages based on stumpage value, production value, lost profits, and the before-and-after property value may be inappropriate. This was recognized in *Tatum*. *Tatum*, at 583, held RCW 64.12.030 was applicable to "ornamental" trees and shrubs as well as timber and trees grown for production. The trial court's award of damages based on restoration costs was upheld as within the province of the trier of fact. *Tatum*, at 584.

Selfors contend *Tatum* is not controlling because it did not set forth a definition of "ornamental" trees and, in any case, Sherrells' trees could not be classified as ornamental because they were indigenous trees and were not planted by Sherrells.

Although *Tatum* did not define an ornamental tree, the term serves to distinguish trees grown for production or timber from trees whose primary function and value is essentially noncommercial in nature. In general, something "ornamental" serves to "adorn", "embellish", or "decorate".

■ Here, in addition to "adorning" or "embellishing" Sherrells' property, the trial court found the trees cut by Selfors functioned as a buffer from noise and dust and provided a visual screen for their residence. In short, they were ornamental and, practically speaking, functional. The fact they were native or indigenous to the area is not, by itself, significant, although it could have impacted the cost of replacement. Whether deliberately planted or not, replacement was required to compensate Sherrells for their loss.

An award is appropriate if it is in accord with the principle that damages should be compensatory. *Pearce*, at 875. We hold the trial court did not err in calculating damages based on replacement costs. Further, the trial court's calculation of the amount of replacement costs was supported by expert testimony.

## TREBLE DAMAGES

Selfors contend the trial court erred in awarding treble damages because the trespass was not willful. *Smith v. Shiflett*, 66 Wn.2d 462, 403 P.2d 364 (1965); *Ventoza v.*

*Anderson*, 14 Wn. App. 882, 545 P.2d 1219, *review denied*, 87 Wn.2d 1007 (1976); *Henriksen*. They argue the trespass was not willful because the evidence showed it was not customary for lots to be surveyed in Pineloch, Mr. Selfors asked the manager's help in locating the boundary line, he tried to contact Sherrells, and there was no profit motive.

■ Sherrells contend if there are no mitigating factors, the court must treble damages. *Seattle-First Nat'l Bank v. Brommers*, 89 Wn.2d 190, 195, 570 P.2d 1035 (1977). The burden of proving mitigating circumstances was on Selfors and they failed to do so. *Ventoza*, at 894; *Tatum*, at 584. The property line was clearly marked with pins and white stakes next to the pins, no survey was done, no neighbors or others familiar with the property were contacted, Sherrells were not notified, and the Pineloch manager had no authority to establish boundaries. In short, Sherrells contend no reasonable efforts were made to locate the property line.

■■ The trial court found that Selfors' conduct in cutting the trees was not casual or involuntary. Even if the late assignment of error to findings 1.4 and 1.5 is considered, those findings are supported by substantial evidence. Selfors did not meet their burden of proving mitigation.[5] *Ventoza*, at 894. It is not a mitigating factor for the trespasser to be acting in good faith. *Sparks*, at 721. As Sherrells contend, the question of whether one acted "willfully" for purposes of trebling damages is a factual issue for the trier of fact, and the court's factual findings as to willfulness will not be disturbed if based on substantial evidence. *Henriksen*, at 126.

---

[5]There was sufficient evidence to support finding 1.5 that the boundary line could have reasonably been ascertained by the existing stakes and finding 1.4 that the rod sticking 3 or 4 feet out of the ground with a grounding clasp and electrical cable coming from it was clearly not a survey stake or grounding rod. And, although Mr. Selfors tried to contact Sherrells, he did not speak with them or other neighbors who might have known about the boundary lines. It is true he contacted the manager of Pineloch. However, he did not have approval of his plans to cut trees from the architectural committee *before* he cut them, a requirement under Pineloch's covenants. Further, even if the trial court found good faith, which it did not do, acting in good faith is not a mitigating factor. *Sparks*, at 721. In short, Selfors did not meet *their* burden of proving mitigation.

Sherrells contend this appeal is frivolous and they are entitled to attorney fees on appeal because Selfors set out three assignments of error, then failed to identify the findings and conclusions upon which they based their assignments. *Fay v. Northwest Airlines, Inc.*, 115 Wn.2d 194, 200, 796 P.2d 412 (1990).

We find Selfors' challenge did not lack merit. Therefore, attorney fees are denied.

The judgment of the trial court is affirmed.

MUNSON and SWEENEY, JJ., concur.

Review denied at 125 Wn.2d 1002 (1994).