
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIKE KREIDLER, Insurance Commissioner for the State of Washington and as Receiver for Cascade National Insurance Company in Liquidation,<br><br>   Plaintiff - Appellee,<br><br> v.<br><br>DANNY L. PIXLER,<br><br>   Defendant,<br><br> and<br><br>ANTHONY HUFF; SHERI HUFF, individually and their marital community; MIDWEST MERGER MANAGEMENT LLC, a Kentucky Limited Liability Company,<br><br>   Defendants - Appellants. | No. 11-35095<br><br>D.C. No. 2:06-cv-00697-RSL<br><br>**MEMORANDUM**[*] |
| MIKE KREIDLER, Insurance Commissioner for the State of Washington and as Receiver for Cascade National Insurance Company in Liquidation, | No. 11-35148<br><br>D.C. No. 2:06-cv-00697-RSL |

---

  [*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Plaintiff - Appellant,

v.

DANNY L. PIXLER,

Defendant,

and

ANTHONY HUFF; SHERI HUFF, individually and their marital community; MIDWEST MERGER MANAGEMENT LLC, a Kentucky Limited Liability Company,

Defendants - Appellees.

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted April 9, 2012
Seattle, Washington

Before: HUG, TASHIMA, and CALLAHAN, Circuit Judges.

Defendants-Appellants Anthony Huff, Sheri Huff, and Midwest Merger

Management LLC ("Midwest") appeal from the district court's judgment,

following a jury trial in this diversity case, in favor of Plaintiff-Appellee Mike

Kreidler, the Insurance Commissioner for the State of Washington and the receiver

for Cascade National Insurance Company ("Cascade"). The court awarded

Kreidler $19.3 million, which represented the amount due and unpaid for workers' compensation claims paid by Cascade for over 15,000 California workers. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

## I. Background[2]

Anthony Huff and co-defendant Danny Pixler used Midwest, a Kentucky company, to serve as an intermediary between Cascade, the insurance carrier, and a professional employer organization ("PEO"), the entity that serves as the policyholder for workers and their employers. Ordinarily the carrier pays workers' compensation insurance claims while the PEO collects premiums and pays the carrier for the policy. Here, however, all payments went through Midwest before Cascade was paid. In the process, Huff, his wife Sheri, and others siphoned millions of dollars for personal use and Midwest fell behind in its payments to Cascade. Cascade became aware of Midwest's and Huff's unusual involvement only after it began providing coverage, but by then it was too late. Once Cascade processed all of the claims at issue, Midwest had paid Cascade less than a third of what Cascade was owed, and Cascade was forced into receivership.

---

[1] Because we affirm the district court, we do not reach Kreidler's protective cross-appeal.

[2] We restate the facts and procedural history only as necessary to explain our decision.

3

Based on the evidence, the jury found the defendants variously liable for civil conspiracy, negligent misrepresentation, fraud, misappropriation, breach of contract, and violations of Washington's Consumer Protection Act, Rev. Code Wash. § 19.86.010 *et seq.*, and Criminal Profiteering Act, *id.* § 9A.92.010 *et seq.* The district court denied the defendants' motion for judgment as a matter of law and/or a new trial. The Huffs and Midwest appeal on grounds of insufficient evidence, improper jury instructions, inconsistent or improper decisions by the jury, and Kreidler's standing under the Bankruptcy Code.

## II. Standards of Review

We review *de novo* the district court's denial of a motion for judgment as a matter of law, upholding the verdict if it is supported by substantial evidence and viewing the evidence in favor of the non-movant. *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1067 (9th Cir. 2011). We review for abuse of discretion the district court's formulation of the jury instructions. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 941 (9th Cir. 2011). Finally, we review *de novo* the district court's grant of summary judgment. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).

## III. Discussion

**1.** Substantial evidence supports the jury's verdicts against Anthony and Sheri Huff. Substantial evidence shows that Anthony Huff misrepresented material facts that induced Cascade to do business with him and Midwest, such as concealing his and Pixler's control over Midwest as well as Midwest's role as an intermediary between the PEO and Cascade. There also is substantial and unrebutted evidence that Anthony Huff and Midwest misappropriated funds from Cascade in the amount of $3.35 million.[3] The jury's verdicts against Anthony Huff and Midwest for civil conspiracy and for violations of the Consumer Protection Act and Criminal Profiteering Act were supported by these misrepresentations and misappropriations, as well as by other unlawful acts.

As for Sheri Huff, substantial evidence shows that she (1) repeatedly stole, for personal expenses, money that more likely than not was owed to Cascade, thus violating the Criminal Profiteering Act; (2) entered into an agreement with Anthony Huff to divert funds owed to Cascade for personal use, and committed acts to achieve that end; and (3) committed acts that deceived or had the "capacity

---

[3] Kreidler's inability to precisely trace these diversions was the result of Midwest's poor accounting and, in any event, is not required by Washington law. *See Gilmartin v. Stevens Inv. Co.*, 43 Wash. 2d 289, 294, 261 P.2d 73 (1953); *Sherrell v. Selfors*, 73 Wash. App. 596, 601, 871 P.2d 168 (1994).

5

to deceive" the public about Midwest's true ownership and operation, thus violating the Consumer Protection Act. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 785 719 P.2d 531 (1986); *Salois v. Mutual of Omaha Ins. Co.*, 90 Wash. 2d 355, 359, 581 P.2d 1349 (1978); *see also* Rev. Code Wash. § 48.01.030.

2.      The district court did not abuse its discretion in denying Sheri Huff's motion for a new trial due to an allegedly inconsistent jury verdict. The court must "reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence." *Guy v. City of San Diego*, 608 F.3d 582, 586 (9th Cir. 2010); *see also Norris v. Sysco Corp.*, 191 F.3d 1043, 1048 (9th Cir. 1999). The jury concluded that Sheri Huff violated the Criminal Profiteering Act but that she did not misappropriate money from Cascade. These verdicts are consistent because the predicate act underlying Kreidler's criminal profiteering claim was theft, not misappropriation, and because Kreidler's profiteering and misappropriation claims concerned different types of payments that Midwest owed to Cascade. The jury understood these distinctions: it awarded $3.35 million for misappropriation, $820,000 for criminal profiteering, and $19.3 million for other claims.

3.      The district court did not abuse its discretion in tendering to the jury an instruction regarding "participating in the business of insurance." Kreidler

6

claimed the defendants were liable for civil conspiracy, which required him to prove that two or more people conspired to accomplish an illegal purpose. While that purpose could have been misappropriation or fraud, it also could have been participating, or permitting someone else to participate, in the business of insurance despite that person's ineligibility due to a prior conviction for a criminal felony involving dishonesty or breach of trust. Anthony Huff's prior guilty plea and conviction thus provided a legal basis for the jury's verdict against him. The instruction was not unfairly prejudicial because the jury knew about Huff's conviction with or without the "business of insurance" instruction, and there is no evidence the jury ignored or misconstrued other evidence because of the instruction.

4.     The district court did not err in submitting to the jury the question of Cascade's third-party beneficiary status under the Risk Allocation Agreement between Midwest and its subsidiary, Certified Services, Inc. ("Certified"). New York law, which governs under the parties' agreement, requires the factfinder to decide the meaning of an ambiguous contract. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000). Here, ambiguity about whether Cascade was an intended third-party beneficiary existed because there was conflicting testimony about how the agreement worked vis-à-vis Cascade. However, even if Cascade's

7

status was not ambiguous, making it error to submit that issue to the jury, that error was "more probably than not harmless." *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1473 (9th Cir. 1995). The district court determined that it would have reached the same conclusion as the jury—i.e., that Cascade was an intended third-party beneficiary.[4]

    **5.**    Kreidler had standing under Bankruptcy Code to pursue private claims against the defendants. A creditor's claim for fraudulent conveyance of assets is the exclusive property of the bankruptcy estate and trustee if the debtor could have asserted it. *See* 11 U.S.C. § 544; *In re Acequia, Inc.*, 34 F.3d 800, 808-09 (9th Cir. 1994). Kreidler's claims in this case were claims to recover funds the defendants took from Cascade, not assets they fraudulently conveyed from Certified, which is involved in a separate bankruptcy proceeding. The Certified bankruptcy trustee is aware of, and made no objection to, Kreidler's claims in this case. The district court properly granted summary judgment to Kreidler on this issue.

---

[4] Cascade meets the definition of an intended third-party beneficiary under New York law. *See, e.g.*, *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (quoting Restatement (Second) of Contracts § 302); *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 600 (2d Cir. 1991); *Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co.*, 261 A.D. 2d 117, 123, 689 N.Y.S. 2d 455 (1999).

The district court's judgment for Plaintiff-Appellee Mike Kreidler is

**AFFIRMED**.