# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| REPRESENTACIONES Y DISTRIBUCIONES EVYA, S.A. DE C.V., a Mexican Corporation; and INSTALACIONES ELETROMECANAIS, CIVILES Y ELETROMECANAIS, S.A. DE C.V., a Mexican Corporation,<br><br>    Respondents/Cross-Appellants,<br><br>    v.<br><br>GLOBAL EXPLORER, LLC, a Washington LLC; GLOBAL ENTERPRISES, LLC, a Washington LLC MARITIME MANAGEMENT SERVICES, INC., a Washington Corporation,<br><br>    Appellants/Cross-Respondents,<br><br>TREVOR and JANE DOE STABBERT, and the marital community composed thereof; JUAQUIN PERRUSQUIA, a citizen of Mexico,<br><br>    Defendants,<br><br>FRANK AND JANE DOE STEUART, and the marital community composed thereof,<br><br>    Cross-Respondents. | No. 66812-9-I consolidated with No. 66813-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br>FILED: March 4, 2013 |

GROSSE, J. — Where a trial court has evaluated the evidence in a bench trial, review of that decision is limited to determining whether substantial evidence supports the trial court's findings of fact and whether those findings support the court's conclusions of law. Here, substantial evidence supported the trial court's findings of fact and conclusions of law that Global breached the

contract when it withdrew its ship resulting in damages and loss of profits for Representaciones y Distribuciones Evya, S.A. de C.V. (EVYA).

Both Maritime Management Services, Inc. (MMS) and Global are liable for the proven damages incurred as a result of their conversion of EVYA's equipment that remained on board when the ship withdrew without off-loading that equipment. Additionally, we find no merit to EVYA's cross appeal.

The trial court is affirmed.

## FACTS

The facts are well known to the parties and we will not restate them here except as is necessary to the decision. In 2005, EVYA formed a joint venture with Instalaciones Electromecanais, Civiles y Electromecanais, S.A. de C.V. (IECESA) to bid on a contract for Petróleos Mexicanos (PEMEX). PEMEX awarded the 24 million dollar contract to perform the inspection, maintenance, and repair services on oil platforms and pipelines to EVYA. To accomplish this task, EVYA needed a ship from which it could launch divers to perform these contractual duties. Global Explorer, LLC, through its agents, Trevor and Richard Stabbert, marketed its ship as one that met the specifications designed in the PEMEX contract. Global Explorer, LLC is a cancelled company, whose successor in interest is Global Enterprises, LLC. Sole manager of both companies is Frank Steuart and the sole owner of both companies is Steuart Investment Company (Global). Global retained MMS to manage the ship. The ship's captain and crew were employees of MMS. EVYA chartered the ship from Global Explorer, LLC on October 6, 2005 for $26,500.00 per day for a fixed-term,

410-day charter that spanned the period from October 14, 2005 to November 18, 2006.

On May 13, 2006, the captain ceased all diving operations. On May 16, 2006, EVYA's monthly payment for Invoice 161 became due. On May 30, Global terminated the charter. A few days later, the ship off-loaded EVYA's personnel, but not EVYA's equipment, at the Mexican port of Dos Bocas.

As a result of losing the ship, EVYA was unable to complete the contract with PEMEX and was subject to a performance bond penalty. EVYA expended monies to litigate and negotiate with PEMEX to avoid paying the penalty. Additionally, some of the equipment that remained on the ship had been rented by EVYA and was subject to extensive late fees.

EVYA sued Global for breach of contract and lost profits. EVYA also sued MMS and Global for conversion of its equipment. In a bench trial, the court found Global breached the contract and was liable for the lost profits and the money EVYA expended on attorney fees to prevent PEMEX from exercising the performance bond. Additionally, the trial court awarded damages against both Global and MMS for conversion. Global and MMS appeal. EVYA cross appeals, contending the trial court failed to include certain damages and erred in not awarding it punitive damages.

We review a bench trial where the trial court has evaluated the evidence to determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the court's conclusions of law.[1] Substantial evidence is evidence sufficient to persuade a fair-minded person of

---

[1] Standing Rock Homeowners Ass'n v. Misich, 106 Wn. App. 231, 242-43, 23 P.3d 520 (2001).

3

its truth.[2] Evidence may be substantial even if there are other reasonable interpretations of the evidence.[3] Appellate courts defer to the trial court's determinations on the persuasiveness of the evidence, witness credibility, and conflicting testimony.[4] We will not disturb a trial court's ruling if substantial, though conflicting, evidence supports its findings of facts.[5]

Breach of Contract

Global argues that EVYA repudiated the contract when it conducted unsafe diving operations, failed to obtain the necessary insurance, and failed to make an installment payment after Global had shut down diving operations. Global's claims are without merit. After a five week trial, the trial court issued 26 pages of findings of fact and conclusion of law, setting forth the evidence relied on in reaching its decision that Global breached the contract. The record demonstrates that it was Global not EVYA who committed the breach. Global removed the vessel because it desired to obtain more money for its rental. None of Global's assertions against EVYA have any merit. We have reviewed the record and find that substantial evidence supports each of the trial court's findings of fact and conclusions of law.

Post-Judgment Interest Rate

The trial court awarded Washington's 12 percent post-judgment interest rate. Global argues that the court should have applied the lower interest rate

---

[2] Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006).
[3] Sherrell v. Selfors, 73 Wn. App. 596, 600-01, 871 P.2d 168 (1994).
[4] Snyder v. Haynes, 152 Wn. App. 774, 779, 217 P.3d 787 (2009).
[5] Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

4

applicable in maritime cases as set forth in 28 U.S.C. § 1961.[6] This argument has no merit. 28 U.S.C. § 1961 applies to federal district courts.

<u>Conversion</u>

The trial court found both Global and MMS liable for converting EVYA's equipment when the ship left the Mexican port. The law of conversion is the same for Washington and maritime law. "'Conversion' is the 'act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'"[7] Conversion has its roots in the common law action of trover.[8] Trover "'redressed an interference with one's interest in a chattel that was substantial enough to justify compelling the wrongdoer to pay for it as in a forced sale.'"[9]

Global and MMS argue that there was no conversion because EVYA refused to off-load its own equipment, various port preconditions to off-loading the equipment prevented them from doing so, and that their intent to off-load the equipment at the Port of Veracruz was foiled because engine problems caused them to divert the ship to Texas for emergency repairs.

Steuart ordered the ship to head to Dos Bocas. The ship arrived on June 2, and docked on June 3, 2006. MMS refused to off-load the ship because they

---

[6] 28 U.S.C. § 1961 applies to admiralty and maritime cases. Post-judgment interest is computed at "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" the date of judgment.

[7] <u>Brown ex rel. Richards v. Brown</u>, 157 Wn. App. 803, 239 P.3d 602 (internal quotation marks omitted) (quoting <u>Consulting Overseas Mgmt., Ltd. v. Shtikel</u>, 105 Wn. App. 80, 83, 18 P.3d 1144 (2001)).

[8] <u>Alhadeff v. Meridian on Bainbridge Island, LLC</u>, 167 Wn.2d 601, 619, 220 P.3d 1214 (2009).

[9] <u>Potter v. Washington State Patrol</u>, 165 Wn.2d 67, 78, 196 P.3d 691 (2008) (quoting <u>Iglesias v. United States</u>, 848 F.2d 362, 364 (2d Cir. 1988)).

would need to use welding equipment that required a special permit, called a "hot permit." However, Manuel Reyes Galindo, the agent hired by Global to arrange a crew to off-load the equipment and coordinate with the port, testified otherwise. Galindo testified that he had hired a crew, but the crew was not used and further that there was no impediment to the ship unloading the cargo. Additionally, on June 6, Richard Stabbert sent an e-mail to his stepson, Trevor Stabbert, that he was notified that the port and customs did not refuse to off-load and did not deny the hot permit.

Also on June 6, 2006, MMS informed Steuart/Global that they needed to devise another plan because their agent informed them that a hot permit was not needed and MMS did not need permission to off-load the equipment. MMS and Global knew that EVYA was seeking court action and e-mails between the ship and Steuart indicated the desire to leave before being prevented from doing so. MMS suggested the plan to designate Veracruz as the next port and then divert the ship to Texas.

When the ship departed from Dos Bocas, the captain had no intention of returning to Mexican waters and planned to divert as soon as possible to Texas, where it made repairs and rented the ship out for over $40,000.00 a day commencing on July 1. Two hours after the ship left port with the Veracruz destination, the captain changed the destination to the ECO-1 platform. A supply boat from PEMEX arrived and material belonging to EVYA was mistakenly unloaded. The ship's next off-loading of equipment occurred in Texas.

The trial court correctly found that EVYA was not in breach of the contract and therefore had no obligation to off-load their equipment from the ship and

6

even if such an obligation existed, the circumstances created by MMS and Global made it impossible for them to do so.

In August 2006, Global arranged for the return of some of the equipment to EVYA, IECESA, and some of the vendors.

MMS argues that even if the equipment is found to have been converted, it is not responsible for the conversion because it was acting under orders from Global. One who joins in and knowingly assists in the conversion of property is liable for the tort, even though he receives no direct benefit therefrom and even though he acted as an agent for another.[10] There was substantial evidence to indicate that MMS and its agents took part in the deception of EVYA. The string of e-mails between the Stabberts and Steuart clearly indicated that MMS could have off-loaded the equipment. Those e-mails show that MMS in effect conspired with Steuart to get the ship out of port before the Mexican authorities could stop it. MMS and its own agents on the scene knew that the equipment was capable of being off-loaded and that there was no hot permit or other obstruction preventing them from off-loading the equipment.

Substantial evidence supports the trial court's finding that both MMS and Global were liable for the conversion of the equipment and the damages sustained because of such conversion.

Cross Appeal

EVYA cross appeals claiming that the trial court erred in failing to award punitive damages and in not including damages for sums it had expended in paying Invoice 161 and monies used to settle commercial claims.

---

[10] Dodson v. Economy Equip. Co., 188 Wash. 340, 343, 62 P.2d 708 (1936).

Punitive Damages

EVYA contends the trial court erred in not awarding it punitive damages when the trial court opined that the "deliberate and planned conduct to terminate the contract in order to obtain a higher charter rate and to leave the area where plaintiffs could have recovered their property . . . warrant[ed] an award of punitive damages." In any event, the court noted that EVYA did not argue an award of punitive damages at trial. Further, maritime law embraces the general rule of contract law that punitive damages are not available for breach of contract except "where the defendant's actions constitute an independent tort in addition to being a breach of contract."[11] And as the second circuit noted, although "punitive damages may be awarded under general maritime law," in the maritime context "'[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.'" "This rule applies although the breach is intentional or even when it has been effected with malicious intent."[12]

Damages

EVYA next claims that the trial court erred in failing to include a $371,000.00 payment that it made on Invoice 161 and the $292,638.00 in commercial claims against IECESA, its subcontractor. The trial court was correct in not including these amounts in damages. Had the contract been completed, the $371,000.00 would have been paid as part of the charter and EVYA's profit line would be the same. Likewise the trial court's decision to not include

---

[11] Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1257 (8th Cir. 1994).

[12] Thyssen, Inc. v. S.S. Fortune Star, 777 F.2d 57, 62-63 (2nd Cir. 1985) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 355 (1979)).

IECESA's commercial claims for $292,638.00 was correct because those claims would have been costs incurred had the contract been honored. EVYA does not cite to any part of the record which would contradict this finding. A review of the record reveals that the claims made against IECESA were for labor, equipment, and other work related claims that would have been performed had the contract been completed. The trial court's findings and conclusions are supported by the record.

In conclusion, substantial evidence supports the trial court's findings of fact which in turn support its conclusions of law. Accordingly, we affirm the trial court in all respects.

WE CONCUR: