# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In the Matter of the Marriage of

ASHLEY LYNN KUZIOR,

Respondent,

and

SKIPPER WILLIAM KUZIOR,

Appellant.

No. 51407-9-II

UNPUBLISHED OPINION

CRUSER, J. — Skipper Kuzior appeals from the trial court's orders dissolving his marriage with Ashley Kuzior and the trial court's issuance of a permanent domestic violence protection order against Skipper.[1] Skipper contends that (1) the trial court erred in denying his motion to clarify the CR 2A agreement and in placing restrictions on his visitation, (2) the trial court demonstrated bias against him in finding that he was not credible and in scheduling a date for the presentation of final orders, and (3) the trial court erred in awarding of attorney fees and costs to Ashley. Skipper requests fees on appeal.

We affirm the trial court's orders and grant Ashley's request for attorney fees and costs on appeal.

---

[1] We use the parties' first names for clarity.

FACTS

Skipper and Ashley married in 2005 and have two daughters. In June 2016, Ashley filed a petition for legal separation and a continuing restraining order against Skipper. Ashley also requested that the trial court order supervised visitation and appoint a guardian ad litem (GAL). The trial court granted Ashley's request for a restraining order against Skipper, supervised visitation for Skipper, and appointed a GAL. Subsequently, Ashley filed a petition for dissolution of marriage.

The parties mediated their case in August 2017. Both parties were represented by counsel at the mediation. Skipper and Ashley, and their respective counsel, signed a CR 2A agreement that settled on terms of the decree of dissolution. The agreement states that the parties "acknowledge and agree" that the agreement "fully settled the dissolution case as it relates to division of assets and liabilities, [and] spousal maintenance." Clerk's Papers (CP) at 269. The agreement also specified that each party would pay their own attorney fees and costs.

One week after the mediation, Skipper filed a motion to "clarify"[2] the CR 2A agreement. In his motion, Skipper asked the trial court for "[his] share" of the family businesses, accounts, real estate, and vehicles. CP at 205. He alleged that during the mediation, the mediator was threatening, hostile, and would not let him read the final agreement. After Skipper filed his motion to clarify, his attorney withdrew.

---

[2] Skipper captioned his motion as a "Motion to Clarify Altered Settlement Conference Amendment to Split All Businesses Acquired and Ran by the Respondent and Petitioner Equally as well as Any Accounts or Real Estate Automobiles." The caption of the motion suggests that he was seeking relief from the CR 2A, not its clarification.

In response to Skipper's motion, Ashley moved to enforce the CR 2A agreement. In support of her motion, Ashley submitted the deposition testimony of the mediator and Skipper's former attorney. The mediator and Skipper's former attorney testified that Skipper was never threatened at the mediation, the mediator did not act "inappropriately," and Skipper entered the CR 2A agreement fully and voluntarily. Skipper's former counsel testified that Skipper was aware of all assets at issue and was informed of all possible settlement options. His counsel also testified that he and Skipper reviewed the agreement together multiple times, going "line by line," before Skipper signed the agreement. CP at 260-61. The trial court denied Skipper's motion to clarify and granted Ashley's motion to enforce the CR 2A agreement.

In October 2017, Skipper moved for an appointment of a new GAL or parenting investigator. Skipper requested that the trial court appoint a new GAL because the first court-appointed GAL did not investigate what he alleged was Ashley's drug use, her mental health issues, or her extended family's criminal history. The trial court denied his motion.

The case proceeded to trial for determination of the parenting plan. Ashley also requested that the court enter a permanent domestic violence protection order against Skipper. At trial, Ashley presented evidence of Skipper's long-term mental health issues, including two court-ordered forensic psychological reports that diagnosed Skipper with "bipolar 1 disorder, manic with psychotic features" and one court-ordered report that diagnosed Skipper with "Schizoaffective Disorder, Manic Type." 1 Verbatim Report of Proceedings (VRP) at 66; Ex. 39 at 14.

Ashley testified about her observations as to Skipper's mental health throughout their relationship. Skipper was prescribed a medication for his disorder, however Ashley testified that he did not take his medication regularly. When Skipper did not take his medication, he stopped

sleeping, experienced bursts of energy, and became incoherent. When this happened, she and their daughters moved out of the home.

Ashley also testified to three incidences where she feared for her safety. First, on or around March 2016, Skipper became agitated and threw several dishes at Ashley. Skipper stopped throwing dishes when Ashley threatened to call the police. Second, in April 2016, Ashley asked Skipper to seek help. A discussion ensued, and Skipper "hit [Ashley] so hard that [she] felt pins move through [her] body." 1 VRP at 72. They were in the car with their two daughters at the time. The court-appointed GAL also reported on the April 2016 incident. During an interview with their daughter, the daughter disclosed to the GAL that she saw her father hit her mother in the car while she was in the back seat. Third, Ashley feared for her safety when she attempted to leave their home because Skipper became incoherent and blocked Ashley's vehicle in their driveway.

The trial court gave its oral ruling on December 14, 2017. After the trial court presented its oral ruling, the trial court set the date for the presentation of the final pleadings. Skipper objected to the trial court's date on the basis that his "[d]ad is about to die at any time. . . . It's going to be really busy." CP at 328. The trial court set a date and directed Skipper to contact Ashley's attorney or the court if "there's a problem." CP at 329.

On December 21, with both parties present, the trial court entered findings of fact and conclusions of law, a dissolution decree, a parenting plan, a child support order, and a permanent domestic violence protection order against Skipper. The trial court found that Skipper has a history of domestic violence as defined by former RCW 26.50.010(3) (2015). The court also found that Skipper had been diagnosed with a schizoaffective disorder and based upon his behavior at trial as

4

well as his litigious behavior throughout the case, he is sporadic in his use of his prescribed medication. The court further found that Skipper's mental health issues affect his behavior and his ability to parent.

The trial court designated Ashley as the primary decision maker and custodian for the children. The trial court put two "phases" to Skipper's visitation limitations in the parenting plan. For the first year following the trial court's order, the trial court limited Skipper's visitation to professionally supervised visitation. The trial court ordered Skipper to engage in regular, ongoing psychiatric treatment and provide the court with quarterly compliance reports. The trial court reserved a decision on phase II for 12 months pending review of Skipper's compliance with the first phase.

The trial court also entered a permanent domestic violence protection order against Skipper. The domestic violence protection order notes that Skipper "appeared and was informed of the order by the court; further service is not required." CP at 169. Skipper refused to sign the order.

Skipper appeals the dissolution decree, parenting plan, and the domestic violence protection order.

## ANALYSIS

Skipper contends that the trial court erred by (1) denying his motion to "clarify" the CR 2A agreement, (2) restricting his visitation rights, (3) entering a permanent domestic violence protection order against him, (4) demonstrating bias against him, and (5) awarding Ashley attorney

fees and costs due to his intransigence.[3]  He also requests fees on appeal. We affirm the trial court's

orders and grant Ashley's request for fees and costs on appeal.[4]

I.  DENIAL OF MOTION FOR "CLARIFICATION" OF CR 2A AGREEMENT

Skipper argues that the trial court erred when it denied his motion to "clarify" the CR 2A

agreement because (1) the agreement failed to make a just and equitable division of the family

assets and (2) the "arbitrator" demonstrated bias against him.[5]  Ashley argues that Skipper's

assertions are misplaced and unsupported by the record.  We affirm the trial court.

A stipulated settlement agreement is a contract between parties, and we consider it under

the common law of contracts. *Condon v. Condon*, 177 Wn.2d 150, 162, 298 P.3d 86 (2013).  When

both parties assent to an agreement and present evidence of a writing that is signed by both parties,

---

[3] Skipper also argues that the trial court erred when it did not require Ashley to seek treatment for illegal drug use.  However, Skipper fails to cite to any case law or rule requiring the trial court to enter a finding of fact for every witness or every piece of evidence considered.  Moreover, Skipper does not refer us to any evidence on the record that would support his contention that the trial court erred when it did not require Ashley to seek treatment.  Therefore, we decline to review this issue.

[4] Ashley argues that we should not consider Skipper's appeal because his brief does not conform with RAP 10.3(a)(4), (5), and (6).  We agree that Skipper's brief does not conform with RAP 10.3(a)(4), (5), and (6), but we exercise our discretion under RAP 1.2(a) to review the merits of Skipper's claims.

[5] Skipper also argues on appeal that (1) the CR 2A agreement was procured by fraud because he did not sign the agreement, (2) he did not consent to opposing counsel transferring the agreement to a word document, (3) the arbitrator exceeded his power, and (3) he did not receive notice of the "arbitration."  However, Skipper either did not raise these arguments at the trial court level or does not provide a sufficient record to evaluate the merits of these arguments on appeal.  As a general rule, we do not consider an issue raised for the first time on appeal.  RAP 2.5(a); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).  Additionally, as the appellant, Skipper has the burden to establish the grounds for reviewing an issue for the first time on appeal. RAP 2.5(a); *State v. Grimes*, 165 Wn. App. 172, 186, 267 P.3d 454 (2011).  Therefore, we decline to address these claims.

6

the trial court will enforce it.  CR 2A.[6]  "The purpose of CR 2A is to give certainty and finality to settlements."  *Condon*, 177 Wn.2d at 157.

Where a party signs a contract, he is presumed to have objectively manifested assent to its contents.  *Cruz v. Chavez*, 186 Wn. App. 913, 920-21, 347 P.3d 912 (2015).  We will review stipulations only for fraud, mistake, misunderstanding, or lack of jurisdiction.  *de Lisle v. FMC Corp.*, 41 Wn. App. 596, 597, 705 P.2d 283 (1985).  Where a trial court has determined that the parties entered into the stipulation disposing of property in a divorce case with understanding and agreement, we will not disturb the trial court's judgment unless there is a clear and manifest abuse of discretion.  *Baird v. Baird*, 6 Wn. App. 587, 590-91, 494 P.2d 1387 (1972).

Here, the CR 2A settlement agreement is a formal, written contract signed by Ashley, Skipper, and their respective attorneys.  The parties entered the agreement "with respect to their dissolution of marriage action," and the purpose of the agreement was to "acknowledge and agree that the parties have fully settled the dissolution case as it relates to division of assets and liabilities, [and] spousal maintenance."  CP at 269.  The agreement contains a clear expression of the terms and an intent to be bound.

Skipper does not allege or present any evidence that his attorney signed the stipulated order in violation of CR 2A or that the trial court lacked jurisdiction.  Further, Skipper does not allege or present any evidence of mistake or misunderstanding that would suggest the trial court

---

[6] CR 2A provides,

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

erroneously denied Skipper's motion to "clarify" or set aside the parties' stipulated agreement. Although Skipper alleges fraud, he does not present any evidence of fraudulent behavior that would lead us to believe that rescission is justified.

Instead, the record establishes the opposite. The CR 2A agreement is signed by all parties, including Skipper and his former counsel. Ashley submitted deposition testimony of both the mediator and Skipper's former counsel, who testified that Skipper was present at the mediation and signed the agreement voluntarily. Skipper's former counsel testified that Skipper was well aware of all assets at issue and of "all of the aspects and possible aspects of his recovery, in terms of a settlement." CP at 253. Before Skipper signed the agreement, counsel reviewed the agreement with Skipper multiple times, going "line by line." CP at 260-61.

Under the CR 2A agreement's plain language, the parties affirmatively settled all issues related to the division of assets, liabilities, and spousal maintenance. We hold that the trial court properly denied Skipper's motion.

## II. TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DOMESTIC VIOLENCE

Skipper argues that the trial court erred when entering the permanent domestic violence protection order because the trial court's findings in support of the protection order are not supported by credible evidence. Skipper also argues that the trial court erred when it restricted his rights to visitation with his children. We disagree.

### A. STANDARD OF REVIEW

Trial courts have broad discretion in adopting a parenting plan, and we generally review such plans for abuse of discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Appellate courts "are reluctant to disturb a child custody disposition because of the trial

court's unique opportunity to personally observe the parties." *In re Marriage of Murray*, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981). The party who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion. *In re Marriage of Kim*, 179 Wn. App. 232, 240, 317 P.3d 555 (2014). A trial court's disposition of property is also reviewed for abuse of discretion. *In re Marriage of Urbana*, 147 Wn. App. 1, 9, 195 P.3d 959 (2008). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

We review the trial court's findings of fact for substantial evidence. *Herring v. Pelayo*, 198 Wn. App. 828, 832, 397 P.3d 125 (2017). Substantial evidence is "a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). We treat unchallenged findings of fact as verities on appeal. *In re Marriage of Fiorito*, 112 Wn. App. 657, 665, 50 P.3d 298 (2002).

We defer to the trial court on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence. *City of University Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001). Following a bench trial where the trial court has weighed the evidence, we determine only whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. *Herring*, 198 Wn. App. at 832. We review the trial court's conclusions of law de novo. *In re Marriage of Wehr*, 165 Wn. App. 610, 613, 267 P.3d 1045 (2011). An unchallenged conclusion of law becomes the law of the case. *The-Anh Nguyen v. City of Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014).

In determining whether substantial evidence exists to support a trial court's finding of fact, we review the record in the light most favorable to the party in whose favor the findings were

entered. *In re Marriage of Gillespie*, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997). Here, the trial court entered its findings of fact in favor of Ashley.

B. CHILD VISITATION RESTRICTIONS

Skipper argues that the trial court erred when it restricted his rights to child visitation. The trial court found that "RCW 26.09.191 factors exist and are dispositive with regard to [Skipper] and his parenting time and decision-making." CP at 176. The trial court also found that Skipper has long-term and "significant mental health issues which affect his behavior and his ability to parent his children." CP at 154. Based on these findings, the trial court limited Skipper's visitation with his children to professionally supervised visits. Skipper does not assign error to these findings.

Additionally, Skipper does not challenge the trial court's finding that he has been "diagnosed with schizoaffective disorder, manic type" and that he is "sporadic in use of his prescribed medication." CP at 154. He also does not challenge the trial court's finding that his diagnosis "affect[s] his behavior and his ability to parent." CP at 154. Unchallenged findings of fact are verities on appeal, and unchallenged conclusions of law become the law of the case. *Nguyen*, 179 Wn. App. at 163.

We hold that substantial evidence supports the trial court's findings and the trial court did not abuse its discretion when it entered the parenting plan or restricted Skipper's visitation to professionally supervised visitation.

C. PERMANENT DOMESTIC VIOLENCE PROTECTION ORDER

Skipper argues that the trial court erred when entering the permanent domestic violence protection order because the trial court's findings in support of the protection order are not

supported by credible evidence. Skipper does not argue that the acts supporting the domestic violence protection order do not meet statutory requirements. Instead, Skipper challenges the trial court's findings of fact supporting the order, arguing that Ashley's testimony about acts of domestic violence was not credible.[7]

The trial court found that Skipper committed "acts of domestic violence against [Ashley] wherein he struck her with a closed fist while driving the family vehicle." CP at 174. The trial court found Ashley "credible with regard to her testimony as to acts of domestic violence aimed at her by [Skipper]." CP at 174. The trial court also found Ashley's fear of Skipper was legitimate, and "there is a legitimate likelihood that [Skipper] will resume acts of domestic violence if & when the order expires." CP at 174.

Skipper's argument is based solely on his perception that Ashley's testimony regarding his acts of domestic violence was not credible. However, we defer to the trial court on issues of conflicting evidence and persuasiveness of the evidence. *McGuire*, 144 Wn.2d at 652. Additionally, "[t]he trial court's credibility findings are not subject to review on appeal." *In re Marriage of DewBerry*, 115 Wn. App. 351, 362, 62 P.3d 525 (2003).

---

[7] In the conclusion section of his brief, Skipper states that the permanent domestic violence protection order entered against him was improperly served, implying that he received insufficient service of process. Skipper gives only passing treatment to this assertion. Because Skipper has presented only a conclusory assertion, we do not consider his claim. *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004).

Here, the trial court's findings are supported by substantial evidence. Ashley testified in detail about Skipper's acts of domestic violence, and the trial court made a specific finding that Ashely's testimony was credible. Additionally, the trial court's findings are further supported by the GAL report, which also disclosed Skipper's domestic violence against Ashley. Moreover, Skipper does not challenge the trial court's other relevant findings that support the protection order, including that Ashley's fear of Skipper was legitimate and there is a legitimate likelihood that Skipper would resume acts of domestic violence if the protection order ever expired.

Substantial evidence supports the trial court's findings of fact, and the findings support the trial court's entry of a permanent domestic violence protection order against Skipper. Accordingly, we reject Skipper's challenge to the trial court's findings in support of the permanent protection order.

### III. JUDICIAL BIAS

Skipper challenges the trial court's finding that he was not credible, arguing that the trial court's finding demonstrated clear bias against him. Skipper's argument appears to be an appearance of fairness claim. We reject Skipper's argument.

An alleged violation of the appearance of fairness doctrine is a legal issue we review de novo. *In re Disciplinary Proceeding Against King*, 168 Wn.2d 888, 899, 232 P.3d 1095 (2010). The law does not presume prejudice on the part of the judicial officer. *In re Application of Borchert*, 57 Wn.2d 719, 722, 359 P.2d 789 (1961). A party asserting a violation of the appearance of fairness doctrine must produce sufficient evidence demonstrating bias. *In re Estate of Hayes*, 185 Wn. App. 567, 607, 342 P.3d 1161 (2015).

"A finding that a party lacks credibility does not mean the judge is biased." *In re Marriage of Rounds*, 4 Wn. App. 2d 801, 808, 423 P.3d 895 (2018). The trial court was entitled to make a credibility finding based on its observations of Skipper, and we do not substitute our judgment for the trial court's judgment. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Additionally, a careful review of the trial court record does not reveal any instance suggesting that the trial court judge developed a negative personal opinion about Skipper that resulted in any bias or prejudice. Accordingly, we hold that the trial court's credibility finding does not support an allegation that the trial court was biased or prejudiced against Skipper.[8]

## IV. PRESENTATION HEARING

Skipper argues that the trial court erred when it proceeded with the presentation hearing of the final orders because he would be unavailable due to the fact his father was about to die at any time.[9] We disagree.

When the trial court set a date for the presentation hearing, Skipper objected to the date because his "[d]ad is about to die at any time," and he will be "really busy." CP at 328-29. Because Skipper objected to the hearing on the basis of a potential scheduling conflict, the trial court

---

[8] Skipper also argued that the trial court demonstrated prejudice against him when it allowed Ashley's attorney to hand write "'Mr. Kuzior is not credible because he has been diagnosed with schizoaffective'" above his signature line on the final dissolution decree. Br. of Appellant at 8. However, the dissolution decree shows that Ashley's attorney did not hand write any such statement on the order.

[9] Skipper also argues that the trial court erred when it proceeded with the presentation hearing of the final orders because it did not afford him an opportunity to seek counsel. However, Skipper did not object to the hearing date on the basis that he desired to retain an attorney for the hearing at the trial court level. Under RAP 2.5(a), we generally do not entertain issues not raised at the trial court level. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). We exercise our discretion and do not consider this issue.

instructed Skipper to contact Ashley's attorney or the court if he could not make the date. Further, Skipper attended the hearing, and the record does not reflect whether he contacted Ashley's attorney or the court to request that the hearing be continued. Therefore, we reject Skipper's argument.

## V. ATTORNEY FEES AND COSTS

### A. AWARD OF FEES AND COSTS FOR SKIPPER'S INTRANSIGENCE

Skipper argues that the trial court erred when it awarded Ashley attorney fees and costs due to his intransigence, and he requests fees on appeal under RAP 18.1. Ashley argues that the trial court did not abuse its discretion when it awarded attorney fees due to Skipper's intransigence because Skipper moved to clarify their settlement agreement and appoint a new GAL based on frivolous grounds. Ashley further requests that we award her fees and costs on appeal based on Skipper's frivolous appeal.

"'An award of attorney's fees rests within the sound discretion of the trial court.'" *In re Marriage of Buchanan*, 150 Wn. App. 730, 739, 207 P.3d 478 (2009) (quoting *Kruger v. Kruger*, 37 Wn. App. 329, 333, 679 P.2d 961 (1984)). A party is intransigent when he or she is uncompromising, including when a party engages in "'foot dragging'" and "'obstruction'" or when the party makes a litigation unduly difficult and increases legal costs by his or her actions. *In re Marriage of Raskob*, 183 Wn. App. 503, 517-18, 334 P.3d 30 (2014) (internal quotation marks omitted) (quoting *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992)). This includes litigious behavior, bringing excessive motions, or discovery abuses. *In re Marriage of*

*Larson*, 178 Wn. App. 133, 146, 313 P.3d 1228 (2013). If intransigence is established, a party may be required to pay attorney fees regardless of his or her resources. *Larson*, 178 Wn. App. at 146.

The trial court awarded Ashley $5,441.63 in attorney fees and costs for Skipper's intransigence. Leading up to the trial, Skipper filed multiple motions that were based in large part on outlandish accusations that he failed to support with any evidence. Skipper's appeal repeats many of these unsupported accusations, does not present any legitimate issues, and demonstrates litigious behavior. Accordingly, we affirm the trial court's award of attorney fees to Ashley, and we grant Ashley's request for attorney fees on appeal.

B. SKIPPER'S REQUEST FOR ATTORNEY FEES UNDER RAP 18.1

Skipper requests attorney fees on appeal under RAP 18.1 due to his financial need. However, Skipper represented himself on appeal, and self-represented parties generally cannot recover fees. *Price v. Price*, 174 Wn. App. 894, 905, 301 P.3d 486 (2013). Even if Skipper could make a claim for fees, Skipper fails to devote a section of his opening brief or cite applicable law to support his request. RAP 18.1(a), (b). We deny Skipper's request for attorney fees on appeal.

CONCLUSION

We hold that the trial court did not abuse its discretion when it denied Skipper's motion to clarify the CR 2A agreement and the trial court's findings of fact raised on appeal are supported by substantial evidence. We further hold that the trial court did not demonstrate bias and did not err in awarding Ashley attorney fees and costs due to Skipper's intransigence. We affirm the trial

No. 51407-9-II

court's dissolution decree, parenting plan, and permanent domestic violence protection order and grant Ashley's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, C.J.

LEE, J.

16