# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| OLIVIA HERRING and WILLIAM HERRING, husband and wife, | No.  48786-1-II |
| Respondents, | |
| v. | |
| JOSE PELAYO and BLANCA PELAYO, individually, and as husband and wife, and the marital community therein, | PUBLISHED OPINION |
| Appellants. | |

WORSWICK, J. — Following a bench trial, the trial court found Jose and Blanca Pelayo liable for timber trespass under RCW 64.12.030 and awarded $10,475 in damages and attorney fees to Olivia and William Herring.  The Pelayos appeal, asserting that (1) the trial court's written findings do not support its conclusion that they had violated RCW 64.12.030, (2) the trial court erred by concluding that there were no mitigating circumstances under RCW 64.12.040, and (3) the trial court erred by awarding damages and attorney fees to the Herrings.  We accept the Herrings' concession that the trial court erred by awarding them attorney fees and, thus, remand to vacate the portion of the judgment awarding attorney fees.  In all other respects, we affirm.

FACTS

The Herrings and Pelayos are neighbors who share a common property line. On or about December 2, 2011, the Herrings hired a tree trimmer to remove some branches from a tree that was located on the common property line. The Herrings did not discuss their plan to remove branches from the tree with the Pelayos. The Pelayos believed that the manner in which the tree branches were removed caused the tree to become unbalanced and that the unbalanced tree constituted a danger to their home and their safety. On December 31, 2011, the Pelayos hired a tree trimmer to remove all the remaining branches from the boundary tree without first discussing their plan with the Herrings. The removal of all the remaining branches caused the boundary tree to die.

The Herrings filed a complaint alleging that the Pelayos committed timber trespass in violation of RCW 64.12.030, or in the alternative, committed trespass in violation of RCW 4.24.630. The matter proceeded to a bench trial. At trial, Jose Pelayo testified in relevant part that (1) he knew the tree at issue was on the Pelayos' and Herrings' common property line, (2) he directed his tree trimmer to remove all of the remaining branches from the tree, (3) he did not discuss his plan to remove the remaining branches with the Herrings, (4) the tree was alive prior to the removal of the remaining branches, and (5) he believed that removing the remaining branches would kill the tree.

The Pelayos' tree trimmer, Timothy Jones, testified that upon inspecting the unbalanced tree, he believed it was a danger to the Pelayos and their home. Jones stated that he had recommended the Pelayos remove the entire tree or, alternatively, remove all the remaining

2

branches. Jones also told the Pelayos that they could remove a top portion of the tree to balance it. During cross-examination, Jones testified that he might have been able to remove some of the remaining branches to render the tree safer without killing it.

Following the bench trial, the trial court entered the following findings of fact, which are challenged on appeal:

> 12. The actions of the Pelayos constituted Timber Trespass under RCW 64.12.030.
> 13. RCW 64.12.040 (Mitigating Circumstances) does not apply.
> . . . .
> 18. The Court awards reasonable attorney fees and costs to the Herrings as determined by this Court based on an attorney fee declaration filed herein.

Clerk's Papers (CP) at 102-03. From these findings of fact, the trial court concluded in relevant part that the Pelayos committed timber trespass, there were no mitigating circumstances, and the Herrings were entitled to attorney fees. The Pelayos appeal.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's decision following a bench trial to determine whether challenged findings are supported by substantial evidence in the record and whether the findings support the conclusions of law. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879-80, 73 P.2d 369 (2003). Because the Pelayos assign error only to findings of fact 12, 13, and 18, the remaining findings are verities on appeal. *Nguyen v. City of Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014). Additionally, because findings of fact 12, 13, and 18 all concern the legal consequences of the Pelayos' conduct rather than the resolution of disputed facts, they are more appropriately characterized as conclusions of law. *Shaw v. Clallam County*, 176 Wn. App. 929,

928 n.1, 309 P.3d 1216 (2013). Accordingly, we review whether the trial court's factual findings support these challenged conclusions of law. *Sunnyside*, 149 Wn.2d at 879-80.

## II. LIABILITY UNDER RCW 64.12.030

The Pelayos contend that the trial court's findings of fact do not support its conclusion that they were liable under RCW 64.12.030 because the trial court failed to find that their conduct in removing the branches from the boundary tree was both (1) willful and (2) without lawful authority.[1] We disagree.

A.     *Willfulness*

The Pelayos first argue that because the trial court failed to specifically find that their conduct was willful, the court erred in concluding that they violated RCW 64.12.030. Because the evidence at trial did not reveal any factual dispute as to whether the Pelayos' conduct in trimming the remaining branches from the tree was willful, the trial court was not required to enter a specific finding on this issue to conclude that Pelayos were liable for timber trespass.

RCW 64.12.030 provides in relevant part:

Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree . . . on the land of another person . . . without lawful authority, in an action by the person . . . against the person committing the trespasses . . . any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

"The rule is well established in Washington that there must be an 'element of willfulness' on the part of the trespasser to support treble damages" under RCW 64.12.030. *Blake v. Grant*, 65 Wn.2d 410, 412, 397 P.2d 843 (1964). In this context, "willful" simply means that the trespass

---

[1] In this regard, the Pelayos challenge finding of fact 12 and conclusion of law 1.

was "not casual or involuntary." *Pearce v. G. R. Kirk Co.*, 22 Wn. App. 323, 325 n.1, 589 P.2d 302 (citing *Blake*, 65 Wn.2d 410, 412; *Ventoza v. Anderson*, 14 Wn. App. 882, 545 P.2d 1219 (1976)), *aff'd* 92 Wn.2d 869, 602 P.2d 357 (1979). And "[t]he burden of proving that a trespass was casual or involuntary is upon the defendant once the fact of trespass and the damages caused thereby have been shown by the plaintiff." *Ventoza*, 14 Wn. App. at 896 (citing RCW 64.12.040; *Smith v. Shiflett*, 66 Wn.2d 462, 403 P.2d 364 (1965); *Blake*, 65 Wn.2d 410; *Longview Fibre Co. v. Roberts*, 2 Wn. App. 480, 470 P.2d 222 (1970)).

The Pelayos do not contend that there was insufficient evidence presented at trial to support a finding of willfulness. Instead, they argue that the trial court could not conclude that they had violated RCW 64.12.030 absent a specific finding that their conduct was willful. But a trial court rendering judgment following a bench trial need not enter written findings as to facts that were undisputed at trial. *LeMaine v. Seals*, 47 Wn.2d 259, 263, 287 P.2d 305 (1955). Further, in interpreting a former version of the timber trespass statute, our Supreme Court has held that a jury need not decide factual issue of whether defendant's conduct was willful where defendant did not claim "its trespass was casual or involuntary, [and where] there [was no] evidence to show that it was of such a character." *Northern Pac. Ry. Co. v. Myers-Parr Mill Co.*, 54 Wash. 447, 452, 103 P. 453 (1909).

Here, Jose admitted at trial that he knew the Herrings had an ownership interest in the boundary tree and that he had directed the remaining branches to be removed from the tree knowing that such removal of branches would kill the tree. Jose's testimony in this regard was tantamount to a concession that his conduct in removing the branches was willful, and there was

no other evidence presented at trial from which the trial court could infer that this conduct was casual or involuntary. Therefore, no specific finding as to willfulness was required to conclude that the Pelayos were liable under RCW 64.12.030. Accordingly, we hold that the Pelayos' argument on this issue is without merit.

B.      *Without Lawful Authority*

Next, the Pelayos appear to argue that the trial court erred as a matter of law in concluding that they were liable under RCW 64.12.030 because they were lawfully authorized to remove branches from the boundary tree that were overhanging their property. Under the specific circumstances presented in this appeal, we disagree.

Under the plain language of RCW 64.12.030, "the [timber trespass] statute applies only to persons acting without lawful authority." *Mustoe v. Ma*, 193 Wn. App. 161, 170, 371 P.3d 544 (2016). And it has long been established in this State that a landowner has the legal authority to "engage in self-help and trim the branches and roots of a neighbor's tree that encroach onto his or her property." *Mustoe*, 193 Wn. App. at 164 (citing *Gostina v. Ryland*, 116 Wash. 228, 199 P. 298 (1921)). On the other hand, our Supreme Court in *Gostina* quoted with approval the rule that a landowner does not have legal authority to cut down an encroaching tree. 116 Wash. at 232. Whether a landowner's legal authority extends to trimming the branches of a tree standing on a common property line, and in a manner that a defendant *knows will kill the tree*, appears to be an issue of first impression.

There is scant Washington law addressing the application of RCW 64.12.030 to trees standing directly on the property line of adjoining landowners. In *Happy Bunch, LLC v.*

6

*Grandview N., LLC*, 142 Wn. App. 81, 173 P.3d 959 (2007), Division One of this court

addressed the appropriate measure of damages when a landowner removes trees located on a

common property line. There, the *Happy Bunch* court held that damages should be calculated by

multiplying the trees' value by the percentage of the trees' trunks growing on the plaintiff's

property. 142 Wn. App. at 93-94. In so holding, the *Happy Bunch* court quoted with approval a

Nebraska Supreme Court opinion that stated, "'[A] tree, standing directly upon the line between

adjoining owners, so that the line passes through it, is the common property of both parties,

whether marked or not; and trespass will lie if one cuts and destroys it without the consent of the

other.'" 142 Wn. App. at 93 (internal quotation marks omitted) (quoting *Patterson v. Oye*, 214

Neb. 167, 333 N.W.2d 389, 391 (1983)).

Although we agree with Division One that trees standing directly on the property line of

adjoining landowners are the common property of both landowners, *Happy Bunch* does not

resolve the question before us because the issue of liability under RCW 64.12.030 was not

addressed in that case.[2]

The Pelayos contend that under *Mustoe* and *Gostina* landowners have an unfettered right

to trim branches that overhang their property regardless of whether the tree is situated entirely on

a neighboring property or, instead, is situated on a shared property line. We disagree.

---

[2] The *Happy Bunch* court specifically declined to address the defendant's contention on appeal
that it could not be liable under the timber trespass statute for removing trees on a common
property line without the adjoining landowner's consent because the defendant failed to cross
appeal the judgment against it. 142 Wn. App. at 90.

In *Mustoe*, Division One relied on our Supreme Court's opinion in *Gostina* to hold that the appellant could not maintain an action for timber trespass based on the defendant's lawful conduct in trimming branches and roots that encroached on the defendant's property. *Mustoe*, 193 Wn. App. at 164-65, 170. In so holding, the *Mustoe* court rejected the appellant's contention that, when trimming encroaching vegetation, landowners owe a duty of care to prevent damage to their neighbor's tree. 193 Wn. App. at 165. But in contrast with *Mustoe*, here the subject tree stands on a common property line and, thus, both the Pelayos and the Herrings have undivided property interests in the tree. *Happy Bunch*, 142 Wn. App. at 93. Because the Pelayos have a property interest in the tree at issue, portions of the tree overhanging their property cannot be said to be "encroaching"[3] in the same manner as the vegetation in *Mustoe*, 193 Wn. App. at 163.

Moreover, as tenants in common, the Pelayos and Herrings were each entitled to use, maintain, and possess the boundary tree, but not in a manner that "interfere[d] with the coequal rights of the other cotenants." *Butler v. Craft Eng. Const. Co., Inc.*, 67 Wn. App. 684, 694, 843 P.2d 1071 (1992) (citing *De La Pole v. Lindley*, 131 Wash. 354, 358, 230 P. 144 (1924)). Therefore, unlike a landowner engaging in self-help to trim branches overhanging his or her property from a tree situated entirely on the property of another, a cotenant to a boundary tree has a duty not to destroy the common property and thereby interfere with the rights of the other cotenants. *Butler*, 67 Wn. App. at 694; *see also Cummings v. Anderson*, 94 Wn.2d 135, 143, 614

---

[3] "Encroach" means "[t]o enter by gradual steps or stealth into the possession or rights of another; to trespass or intrude" and "[t]o gain or intrude unlawfully upon another's lands, property, or authority." BLACK'S LAW DICTIONARY 607 (9th ed. 2009).

P.2d 1283 (1980) (recognizing that "tenants in common have certain fiduciary duties toward each other") (citing 4A R. POWELL, THE LAW OF REAL PROPERTY 605 (P. Rohan ed. 1979)).

Despite these distinctions, the Pelayos argue that the same unfettered right to trim branches overhanging their property should apply when the subject tree stands on a common property line. But, in addition to contravening established law regarding the duties owed to a cotenant of common property, accepting the Pelayos' argument would lead to absurd results. *See Tingey v. Haisch*, 159 Wn.2d 652, 664, 152 P.3d 1020 (2007) ("The outcome of plain language analysis may be corroborated by validating the absence of an absurd result. Where an absurd result is produced, further inquiry may be appropriate."). If landowners possessed an unfettered right to cut the portions of a common boundary tree that stand on their property, without any regard for whether such cutting would injure or destroy the tree, the timber trespass statute could become inapplicable to neighbors sharing a property interest in a boundary tree. Under the Pelayos' proposed application of *Mustoe*, a neighbor sharing a property interest in a boundary tree could effectively destroy the tree and escape liability under the timber trespass statute if the neighbor destroys the tree in a manner that does not physically trespass on the portion of the tree situated on the neighboring property. This result cannot withstand the plain language of RCW 64.12.030, which imposes liability on "*any person* . . . [who] cut[s] down . . . or otherwise injure[s] . . . *any tree* . . . on the land of another person." (Emphasis added.)

But we must also give effect to language in the statute shielding from liability conduct that is taken with "lawful authority." RCW 64.12.030. Therefore, in recognition of the long recognized lawful authority to trim overhanging vegetation, the lawful authority to use and

9

maintain property held in common with a cotenant, and the plain language of the timber trespass statute, we hold that where a tree stands on a common property line, the common owners of the tree may lawfully trim vegetation overhanging their property but not in a manner that the common owner knows will kill the tree.[4]

This result comports with *Gostina*, the principal case relied on by *Mustoe*, which held that the right to trim overhanging vegetation does not extend to cutting down the tree. *Gostina*, 116 Wash. at 232. We discern no meaningful distinction between cutting down a tree and trimming a tree in a manner intended to kill the tree.

Because the uncontroverted evidence at trial showed that the Pelayos directed the removal of the remaining branches of the boundary tree knowing that such removal would kill the tree, they fail to show that the trial court erred by concluding they were liable under RCW 64.12.030.[5]

---

[4] We acknowledge that under *Mustoe* and our holding here, it would appear that a property owner has greater rights with respect to trimming a neighboring tree than a tree standing on a common property line with a neighboring property. This outcome is the result of applying a statute to a situation that was not likely contemplated upon the statute's drafting. Our legislature may clarify the statute's applicability to boundary trees in future legislation. Nonetheless, we are charged with interpreting the statute as it applies to the facts before us, and must give effect to its provisions. And neither party argues that the statute does not apply under these circumstances. The Pelayos argue only that their conduct was undertaken with lawful authority and, thus, they are shielded from liability by the statute's terms.

[5] Because the Pelayos did not file a timber trespass claim against the Herrings, we do not examine whether the Herrings' conduct in removing all the branches overhanging their property also violated RCW 64.12.030.

### III. MITIGATING CIRCUMSTANCES UNDER RCW 64.12.040

Next, the Pelayos contend that the trial court erred by concluding that mitigating circumstances did not apply under RCW 64.12.040.[6] The entirety of their argument on this issue is that, because they cut the tree branches while standing on their property, they had probable cause to believe that they owned the land where such conduct took place. We disagree.

RCW 64.12.040 provides:

> If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his or her own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed [sic] woodlands, for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall only be given for single damages.

The Pelayos argument on this issue rests upon the mistaken belief that the trebling provisions of RCW 64.12.030 cannot apply when the defendant's conduct resulting in the destruction of a tree occurs while the defendant is on his or her own property. In *Jongeward v. BNSF Ry. Co.*, our Supreme Court rejected this argument and held that plaintiffs could recover treble damages under RCW 64.12.030 absent any evidence that the defendant entered the plaintiff's property. 174 Wn.2d 586, 606, 278 P.3d 157 (2012). There, our Supreme Court stated:

> Statutory violations [of RCW 64.12.030] *involve direct trespass to a tree, not trespass to the land on which the tree grows*. Because it is at least possible for a defendant to commit a statutory timber trespass without entering a plaintiff's property, we hold that the timber trespass statute applies when a defendant commits

---

[6] In this regard, the Pelayos assign error to finding of fact 13 and conclusion of law 2.

> a direct trespass that causes immediate, not collateral, injury to a plaintiff's timber, trees, or shrubs, even if the defendant is not physically present on a plaintiff's property.

*Jongeward*, 174 Wn.2d at 606 (emphasis added). Under *Jongeward*, even if the conduct resulting in the tree's death occurred solely on the Pelayos' own property, the trial court would not be required to conclude that mitigating circumstances applied to reduce the damages award. Instead, when determining whether mitigating circumstances applied, the relevant inquiry for the trial court was whether the Pelayos proved that their trespass on the common property tree was casual or involuntary. As discussed in our analysis above, the Pelayos did not claim at trial, let alone prove, that the trespass upon the tree was casual or involuntary. Accordingly, we affirm the trial court's conclusion that there were no mitigating circumstances under RCW 64.12.040.

## IV. ATTORNEY FEES

Next, the Pelayos contend that the trial court erred by awarding the Herrings damages and attorney fees. The Pelayos contention with regard to the damages award relates solely to their arguments above, which we have rejected. Accordingly, we do not further address the damages award.

The Herrings concede that the trial court erred by awarding attorney fees. We accept the Herrings concession. Washington follows the rule that parties in a civil action bear their own attorney fees and costs unless such attorney fees are provided through contract, statute, or a recognized ground in equity. *Cosmopolitan Eng'g Group, Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 296-97, 149 P.3d 666 (2006). RCW 64.12.030 contains no provision for the award of attorney fees. And, although the Herrings' complaint requested attorney fees under RCW

No. 48786-1-II

4.24.630, by its terms the statute does not apply "where liability for damages is provided under RCW 64.12.030."

Because the Herrings did not present any statutory, contractual, or equitable basis for the award of attorney fees at trial, we accept their concession that the trial court erred by awarding them attorney fees. Accordingly, we remand with instructions to vacate the portion of the judgment awarding attorney fees to the Herrings. In all other respects, we affirm.

_____
Worswick, J.

We concur:

_____
Maxa, A.C.J.

_____
Sutton, J.

13