# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| KIRT and LYNN PHILLIPS,<br><br>Respondents,<br><br>v.<br><br>EVELYN RHODA BENNETT, an individual, WILLIAM J. BISHOP, an individual, ERIC WISTI, an individual doing business as ERIC WISTI LOGGING, a Washington Sole Proprietorship, and John Does 1-50.<br><br>Appellants. | No.  54217-0-II<br><br><br>UNPUBLISHED OPINION |

SUTTON, A.C.J. — Evelyn Bennett, William Bishop, and Eric Wisti (Bennett) appeal the superior court's judgment ordering them to pay Kirt and Lynn Phillips (Phillips) $32,540 after finding them liable for timber trespass.  Bennett argues that (1) the superior court erred by applying the wrong legal standard for determining damages because the stumpage value was the proper standard as opposed to the replacement cost, (2) the superior court erred by finding Bennett liable because the evidence established that she tried to warn the faller that the Phillips' trees were on their property and were not to be cut down, and (3) the superior court erred by imposing 12 percent

interest on the judgment. We hold that (1) the superior court properly used the replacement cost in determining damages, (2) the superior court properly found that Bennett was jointly and severally liable, but (3) the superior court erred by imposing 12 percent interest on the judgment.[1] We affirm in part and reverse in part, and remand with instructions for the superior court to strike the 12 percent interest rate and set the interest on the judgment at 7.25 percent, and amend the judgment accordingly.

FACTS

The following facts are undisputed. The Phillips and Bennett are neighbors with adjoining properties in Clark County. Bennett owns a rectangular 5-acre lot, and the Phillips own four lots that border the northern and eastern edge of Bennett's property. A private road, known as NE 8th Street, runs in the vicinity of the boundary line separating the Bennett property from the Phillips' property (the Phillips property) to the north.

In November 2016, Bennett entered into a contract with Eric Wisti whereby Wisti would cut logs from the Bennett property. There was a question about the location of the boundary between the Bennett property and the Phillips property. "At the start of the logging project, Bennett told Wisti to cut all the marketable trees located south of NE 8th Street, except for certain trees that Bennett marked with ribbons, which she had decided to keep because of their aesthetic value." Clerk's Papers (CP) at 5. Wisti's crew started the project but focused on areas of the Bennett property away from the northern boundary. Bennett hired a surveyor to mark the corners and boundary lines of the Bennett property.

---

[1] Bennett could have designated more of the record for our review, but the record is sufficient to reach the merits. RAP 9.2, 9.6, 9.10.

Eventually, Wisti's crew cut down three mature Douglas fir trees that were either wholly or partially on the Phillips property. The Phillips were not in the timber business and had no intention of selling the Douglas fir trees as timber.

The Phillips filed this lawsuit against Bennett, claiming timber trespass, among other claims. The court held a bench trial. At the trial, Bennett testified as to why she chose to save certain trees on the Bennett property:

> Court: Those are trees to save. Why are you saving those trees?
>
> [Bennett]: Well, there were several different reasons. Some were smaller around and too small for [Wisti] to have any value for him. There was some others that had – were good sized around that had some problems, the way the limbs grew out as they grew into the tree itself and it made – the cut wood would have been really poor quality and so I saved those. And, also, some that I just wanted to keep on our road.
>
> Court: For aesthetics.
>
> [Bennett]: Yes.

Verbatim Report of Proceedings (VRP) at 80, 86. Bennett also testified that she initially told Wisti to log all the trees south of the road. She said that she later identified the survey stakes to Wisti's faller and told him that certain trees were on the Phillips property and could not be cut.

Kirt Phillips testified regarding the value the Douglas fir trees provided to him and his wife. He testified that the trees provided "some sound barrier." VRP at 6. He also testified that the trees could be viewed from a second residential home on the Phillips property. Phillips' expert arborist testified that the trees also provided some privacy for the Phillips' home, and that the Phillips could see the trees when they drove down the road on their property.

3

Following a bench trial, the court held that Bennett trespassed and was liable. The court found that the trees were ornamental in nature, and therefore, the replacement cost was the correct method to determine damages.

> Everybody can recognize, and we all know how when the wind blows and the Fir trees sway back and forth and it can have that sense of adorning and embellishing the aesthetics of the property.
>
> . . . .
>
> And, I guess the best evidence for me is that Mrs. Bennett felt strongly enough about these trees on her property that she would save them and destroy the Phillips['] trees. That brings to mind that the most important thing for many of these people out here is to have some $CO_2$ producers growing up on their property and watching the [trees] blow in the wind. So I believe that that raises to the level of replacement.

CP at 42, 46. The court entered written findings of fact and conclusions of law. The following findings of fact are challenged:

> 7. After the survey markers had been put in place, Bennett testified she told Wisti's [faller] not to cut down the three Douglas fir trees that are at issue in this lawsuit, which were located in a narrow strip of property that is north of the Bennett property but south of NE 8th Street. The court finds the testimony regarding this alleged conversation to be cloudy, at best.
>
> . . . .
>
> 10. Phillips was not in the timber business, and he had no intention of selling these three Douglas fir trees as timber. Instead, these three trees, although indigenous to the property, were "ornamental" in that they added to the aesthetic quality of the Phillips property.
>
> 11. The court agrees with the valuations set forth by the expert arborist retained by Phillips, who opined that the replacement or restoration cost of the three trees was $10,700. [Bennett] did not present any controverting evidence regarding the replacement or restoration cost of these trees.

CP at 54-55 (internal footnote omitted).

The following conclusions of law are challenged:

    17. . . . Bennett at the time the trees were cut down, knew the trees were on [the] Phillips property.

    . . . .

    19. As to the proper measure of damages, it depends on the nature of the [Phillips'] use or enjoyment of the trees in question. If the [Phillips are] using the trees for timber, then "stumpage" value would be appropriate. If the [Phillips are] using trees to produce fruit, then the lost production value would be appropriate. And if the [Phillips are] not using the trees for either timber or fruit production, but [are] simply enjoying the trees for their aesthetic value, then replacement cost, also known as restoration cost, would be [the] appropriate measure of damages. Here, the court concludes that the proper measure of damages is their restoration cost of $10,700.

    20. As to the question of joint and several liability . . . Bennett authorized and/or directed Wisti to cut down the trees in question. As a result, the court concludes that Bennett and Wisti are jointly and severally liable to Phillips.

CP at 56-57 (footnote omitted). The court awarded treble damages in the sum of $32,100, plus costs in the sum of $440, for a total of $32,540, and imposed a 12 percent annual interest rate.

Bennett filed a motion for reconsideration, which the superior court denied.

Bennett appeals.

## ANALYSIS

### I. LEGAL PRINCIPLES

#### A. STANDARD OF REVIEW

We review a superior court's decision following a bench trial to determine whether the challenged findings are supported by substantial evidence in the record and whether the findings support the conclusions of law. *Herring v. Pelayo*, 198 Wn. App. 828, 832, 397 P.3d 125 (2017). Unchallenged findings of fact are verities on appeal. *Herring*, 198 Wn. App. at 833.

B. TIMBER TRESPASS

RCW 64.12.030 provides that any person who willfully cuts down, injures, or carries off any tree or shrub on the land of another person "without lawful authority" shall be liable for treble damages claimed or assessed against the person who committed the trespass. "The purpose of the timber trespass statute is well established: 'to (1) punish a voluntary offender, (2) provide treble damages, and (3) discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred.'" *Pendergrast v. Matichuk*, 186 Wn.2d 556, 567, 379 P.3d 96 (2016) (internal quotation marks omitted) (quoting *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 625, 278 P.3d 173 (2012)).

Treble damages are available under RCW 64.12.030 for a willful trespass. *Hill v. Cox*, 110 Wn. App. 394, 405, 41 P.3d 495 (2002). "However, if the trespass 'was casual or involuntary, or . . . the defendant had probable cause to believe that the land on which such trespass was committed was his own' then only single damages are available." *Hill*, 110 Wn. App. at 405 (alteration in original) (quoting RCW 64.12.040). "'[T]he burden of proving that a trespass was casual or involuntary is upon the defendant once the fact of trespass and the damages caused thereby have been shown by the plaintiff.'" *Herring*, 198 Wn. App. at 834 (quoting *Ventoza v. Anderson*, 14 Wn. App. 882, 896, 545 P.2d 1219 (1976)).

## II. DAMAGES

Bennett argues that the superior court erred by applying the wrong legal standard for determining damages because the stumpage value was the proper standard as opposed to the replacement cost. We hold that the superior court applied the correct legal standard and substantial

evidence supports the superior court's finding that the trees were ornamental in nature and it supports the court's conclusion of law. Thus, the superior court properly used the replacement cost in determining damages.

The measure of damages for timber trespass under RCW 64.12.30 depends on the type of tree that was damaged. When the damage is to timber, the appropriate measure of damages is the stumpage value of the severed trees. When the damage is to ornamental trees and shrubs on recreational or residential property, the appropriate measure of damages is the restoration value. *Sherrell v. Selfors*, 73 Wn. App. 596, 602-03, 871 P.2d 168 (1994); *Birchler v. Castello Land Co., Inc.*, 133 Wn.2d 106, 111-12, 942 P.2d 968 (1997); *Hill*, 110 Wn. App. at 404-05; *Tatum v. R&R Cable, Inc.*, 30 Wn. App. 580, 583-84 636 P.2d 508 (1981), *overruled on other grounds by Beckmann v. Spokane Transit Auth.*, 107 Wn.2d 785, 733 P.2d 960 (1987).

The term "ornamental" distinguishes trees grown for timber or production from trees "whose primary function and value is essentially noncommercial in nature." *Sherrell*, 73 Wn. App. at 603. We have held that native trees can be ornamental, even though they were not deliberately planted by the property owner, where the trees function as a buffer from noise and dust, when the trees provide a visual screen for the property, and where the trees enhance the property's aesthetic value. *See Hill*, 110 Wn. App. at 404-05, 408; *Sherrell*, 73 Wn. App. at 603; *Tatum*, 30 Wn. App. at 583-84.

Bennett argues that the superior court applied the wrong legal standard when it focused on the trees' aesthetics.[2] She also argues that "it is not the tree's noncommercial nature alone that determines its valuation." Br. of Appellant at 13. She states that the rule *must* be that trees must serve a functional value rather than simply ornamental because we have never explicitly held otherwise. However, there is no strict requirement that the trees serve a utilitarian purpose in addition to being ornamental, even if we have never held to the contrary. As the Phillips state in their brief, the question is not one of the legal standard, but of whether there was substantial evidence to support the superior court's findings of fact. *See Herring*, 198 Wn. App. at 832.

The evidence supports the superior court's finding of fact that the trees were ornamental "in that they added to the aesthetic quality of the Phillips property." CP at 55. The evidence established that the trees could be viewed from a second residential home on the Phillips property. Kirt Phillips testified that the trees provided "some sound barrier." VRP at 6. The trees also provided some privacy for the Phillips' home, and the Phillips could see the trees when they drove down the road on their property. Further, the fact that Bennett specifically chose not to cut down several of the Douglas firs on her own property for aesthetic purposes established that the trees provided aesthetic value.

---

[2] Bennett argues that trees growing on "isolated property" should be calculated based on the stumpage value. Br. of Appellant at 14. This argument fails because the distance from the house does not necessarily mean the trees are not ornamental. In *Hill*, we found that the trees were ornamental, in part due to the trees proximity to the residential cabin. 110 Wn. App. at 405. However, we did not say, as Bennett seems to imply, that distance alone informed our decision. *See Hill*, 110 Wn. App. at 405.

Because there is substantial evidence in the record to support the superior court's finding that the trees were ornamental in nature and the findings support the court's conclusion of law, we hold that the superior court properly used the replacement cost to determine damages.

### III. JOINTLY AND SEVERALLY LIABLE

Bennett argues that the superior court erred by finding her jointly and severally liable because the evidence established that she told the faller that the Phillips' trees were on the Phillips property and they should not be cut down. We hold that the superior court properly found that Bennett was jointly and severally liable.

Credibility determinations cannot be reviewed on appeal, as credibility determinations are solely for the trier of fact. *Keene Valley Ventures, Inc. v. City of Richland*, 174 Wn. App. 219, 224, 298 P.3d 121 (2013). "A person who directs or advises another to commit a timber trespass is liable for his or her own 'culpable malfeasance.'" *Porter v. Kirkendoll*, 194 Wn.2d 194, 202, 449 P.3d 627 (2019).

The evidence established that Bennett initially instructed Wisti to "cut down all the marketable trees located south of NE 8th Street, except for certain trees that Bennett marked with ribbons, which she had decided to keep because of their aesthetic value." CP at 54. Bennett testified that she told Wisti's faller not to cut down the three Douglas fir trees that were located on the Bennett property. The superior court found that Bennett's testimony was "cloudy, at best." CP at 55. And the court referred to an "alleged warning by Bennett." CP at 55. The court clearly found that Bennett's testimony was not credible, and we do not disturb credibility determinations. *See Keene Valley Ventures, Inc.* 174 Wn. App. at 224. Therefore, the evidence substantially

supports the findings of fact, which support the conclusion that Bennett knew the trees at issue were on the Phillips property and that she authorized and/or directed Wisti to cut those trees down.

Because we do not disturb credibility determinations, and because the superior court's findings of fact are supported by substantial evidence and they support the conclusions of law, we hold that the superior court properly concluded that Bennett was jointly and severally liable.

## IV. INTEREST

Bennett argues that the superior court erred by imposing 12 percent interest on the judgment. We agree.

RCW 4.56.110(3)(b) requires that for judgments founded on "tortious conduct," such as here, the interest rate should be "two percentage points above the prime rate." Courts calculate the interest rate at the date of entry of the judgment. RCW 4.56.110(3)(b).

At the time the court entered its judgment on September 13, 2019, the applicable interest rate was 7.25 percent.[3] The superior court erred by setting the interest rate at 12 percent. Accordingly, we remand for the superior court to strike the 12 percent interest rate and set interest on the judgment at 7.25 percent, and amend the judgment accordingly.

---

[3] *State Maximum Interest Rate*, Wash. St. Register,
https://leg.wa.gov/CodeReviser/Documents/rates.htm.

No. 54217-0-II

CONCLUSION

We affirm in part and reverse in part, and remand with instructions for the superior court to strike the 12 percent interest rate and set the interest on the judgment at 7.25 percent, and amend the judgment accordingly.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

We concur:

MAXA, J.

GLASGOW, J.