# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JUBITZ CORPORATION, an Oregon Corporation, | No. 53256-5-II |
| Appellant/Cross-Respondent, | |
| v. | |
| VANCOUVER HOSPITALITY PARTNERS, LLC, a Washington limited liability company, | UNPUBLISHED OPINION |
| Respondent, | |
| ROBERT HOLMSTROM and ELIZABETH HOLMSTROM, individuals, | |
| Respondents/Cross-Appellants. | |

LEE, C.J. — Jubitz Corporation leased a piece of property from Robert and Elizabeth Holmstrom. Jubitz also entered into an agreement with the Holmstroms to purchase the property in 2023. After Jubitz entered the lease and purchase agreements, it learned the property was burdened by Reciprocal Parking Agreements (RPAs) with the adjacent property, which is owned by Vancouver Hospitality Partners, LLC.

Jubitz sued Vancouver Hospitality and the Holmstroms, seeking a judgment declaring the RPAs invalid and for damages. The trial court ruled that Jubitz had no actual notice of the RPAs and that the RPAs incorrectly identified the affected properties. However, the trial court found that Jubitz had constructive notice of the RPAs. The trial court then reformed the RPAs between Vancouver Hospitality and Jubitz to correctly identify the properties based on the evidence of the

parties' intent and ruled that the RPAs were enforceable as between Jubitz and Vancouver Hospitality. The trial court also awarded damages to Jubitz from the Holmstroms for the reduction in property value resulting from enforcement of the RPAs.

Jubitz appeals the trial court's order reforming and enforcing the RPAs. The Holmstroms cross-appeal the trial court's judgment awarding Jubitz damages and attorney fees. We reverse the trial court's order reforming and enforcing the RPAs, reverse the trial court's judgment awarding Jubitz damages and attorney fees, and remand for further proceedings consistent with its opinion.

FACTS

A.     PROCEDURAL FACTS

On February 27, 2017, Jubitz filed a complaint against Vancouver Hospitality and the Holmstroms. Jubitz sought judgment declaring the RPAs invalid, and quieting title to the property. Jubitz also alleged claims for breach of contract and fraud against the Holmstroms.[1]

Vancouver Hospitality filed counterclaims against Jubitz, seeking reformation of the flawed RPAs and to quiet title to the RPAs. Alternatively, Vancouver Hospitality asserted a prescriptive easement for parking. Vancouver Hospitality also raised a claim for trespass and sought injunctive relief to prevent Jubitz from interfering with the RPAs. Later, Vancouver Hospitality amended its answer to assert cross-claims against the Holmstroms including negligence, indemnification, and breach of contract. Vancouver Hospitality's amended answer

---

[1] The trial court granted the Holmstroms' motion for partial summary judgment dismissing Jubitz's claims for quiet title and anticipatory breach of the purchase and sale agreement because Jubitz had not yet purchased the property and the claims were premature. Jubitz does not appeal the trial court's order granting partial summary judgment.

included reformation in the section titled counterclaims and cross-claims, but it did not specify whether the claim for reformation was a counterclaim against Jubitz or a cross-claim against the Holmstroms.

The Holmstroms also filed counterclaims of rescission of the purchase and sale agreement (PSA) against Jubitz. In its counterclaims, the Holmstroms sought to the have the PSA declared void. The Holmstroms also asserted indemnification from Jubitz for the claims filed by Vancouver Hospitality.

By stipulation, the trial was bifurcated, allowing any claims regarding damages to be tried after determination of the merits of the claims.

B. UNCHALLENGED FINDINGS OF FACT[2]

Following the liability phase of trial, the trial court entered written findings of fact. The trial court found that the Holmstroms were the owners of commercial real property it identified as the original parcel. The Holmstroms participated in a boundary line adjustment with the owner of the adjacent property, Krenzler Corporation. As part of the boundary line adjustment, the Holmstroms divided their original parcel into two separate parcels. The northern property was used for a card lock oil company. The southern property was to be developed into a hotel.

The trial court also found that "to assist with the development of the southern parcel, the Holmstroms prepared a reciprocal parking agreement." Clerk's Papers (CP) at 2119. The trial court described the RPAs as follows:

---

[2] None of the parties assign error to the trial court's findings of fact. Unchallenged findings of fact are verities on appeal. *Herring v. Pelayo*, 198 Wn. App. 828, 833, 397 P.3d 125 (2017). Therefore, the trial court's findings of fact are verities on appeal.

> The initial [RPA] was originally recorded on July 8, 1999. An amended RPA was recorded on August 6, 1999. Both of the RPAs attached the legal description of the original [combined] parcel, but referenced this description as the northern property. *At that time, the Holmstroms continued to own the original parcel as a single property.* Both of the RPAs attached the legal description of the Krenzler property, and incorrectly referenced this description as the southern property.

CP at 2119-20 (emphasis added). The trial court also found that *after* the RPAs were recorded, the Holmstroms sold the southern portion of their property to Salmon Creek Lodging, LLC, which was created to own and operate the hotel. The Holmstroms were members of Salmon Creek Lodging, but they did not retain an individual interest in the southern property. Salmon Creek Lodging was referenced in the RPAs but had not been created at the time the RPAs were executed and recorded.

The trial court also made findings regarding the use of each property for parking. The hotel began operating on the southern property and the card lock oil company business continued operating on the northern property. Each business maintained its own parking areas. However, each property's parking area was accessible to the other property. Occasionally, hotel customers would park on the northern property or oil company employees would park on the southern property. Neither the hotel management nor the oil company management asserted rights under the RPAs.

In April 2007, Salmon Creek Lodging sold the southern property to Vancouver Hospitality. The trial court found that the deed transferring the southern property to Vancouver Hospitality from Salmon Creek referenced the RPAs.

In 2012, the Holmstroms agreed to lease, then sell, the northern property and the oil company to Jubitz. Jubitz agreed to lease the northern property until 2023. In 2023, Jubitz would

purchase the property under the terms of the executed PSA. Jubitz had no actual knowledge of the

RPAs prior to entering the lease or PSA. The trial court found:

> The Holmstroms warranted their ability to provide Jubitz with quiet enjoyment of the northern property during the lease, and with clear title to the northern property at closing on the PSA, except for a list of encumbrances provided by a title insurance company and included in the PSA.

CP at 2122. The list of exceptions in the PSA based on information from the title insurance

company did not reference the RPAs.

In 2016, Vancouver Hospitality's occupancy at the hotel improved and hotel customers

were more frequently parking on the northern property. Jubitz complained and eventually began

towing some of the cars. In response, Vancouver Hospitality asserted the right to park on the

northern property under the RPAs.

C.     TRIAL COURT'S CONCLUSIONS ON MERITS OF CLAIMS

On July 16, 2018, the trial court entered conclusions of law based on the above

unchallenged findings of fact (July 16 Order). Based on its findings of fact, the trial court

concluded that the RPAs were within the chain of title for the northern property, and therefore,

Jubitz had constructive notice of the RPAs; although the RPAs did not accurately describe which

properties benefitted from the agreements, sufficient information existed to provide inquiry notice;

and the RPAs are not void because Salmon Creek Lodging did not exist at the time the RPAs were

recorded. The court also concluded that as between Jubitz and Vancouver Hospitality, the RPAs

are enforceable according to their terms and that the RPAs should be reformed to correct the

mistake concerning the legal descriptions. The trial court also concluded that the Holmstroms

were bound by the representations and warranties they made in the lease and PSA.

5

D.      DAMAGES AND JUDGMENT

The trial court later held a second trial on damages.  On February 5, 2019, the trial court entered findings of fact and conclusions of law on damages (February 5 Order).  The trial court found that the RPAs reduced the fair market value of the lease and PSA by $295,000.  However, Vancouver Hospitality's use of the northern property did not cause Jubitz any monetary damages, only annoyance and inconvenience.

Based on the trial court's findings of fact, the trial court entered the following, relevant, conclusions of law:

> 4.      The failure of the Holmstroms to remove the encumbrance imposed on the northern parcel by the existence of the RPAs breached the warranty for quiet enjoyment and possession in the lease.  Jubitz has not waived its right to seek monetary damages resulting from this breach.
> 5.      The failure of the Holmstroms to remove the encumbrance imposed on the northern parcel by the existence of the RPAs breached the warranty to provide Jubitz with clear title at the time of sale, free of any encumbrance not approved by Jubitz, as provided in the PSA.  Jubitz has not waived its right to seek monetary damages resulting from this breach.

CP at 2184-85.

The trial court entered judgment in favor Jubitz for $295,000.  The trial court also entered judgment reforming the RPAs consistent with its findings of fact and conclusions of law. Specifically, the trial court granted Vancouver Hospitality's claim for reformation against Jubitz and reformed the RPAs to reflect the correct property descriptions.  The trial court's judgment also defined "reciprocal non-exclusive parking rights" between Vancouver Hospitality and Jubitz.  CP at 2195.

Following entry of the judgment, Jubitz filed a motion for costs and attorney fees. The trial court granted Jubitz's request for costs and attorney fees. Jubitz was awarded $209,601.50 in attorney fees and $61,326.31 in costs.

Jubitz appeals the trial court's July 16 Order enforcing the RPAs entered after the first trial. The Holmstroms cross-appeal the trial court's order on damages entered after the second trial. The Holmstroms also cross-appeal the trial court's order awarding Jubitz attorney fees and costs.

ANALYSIS

A.    STANDARDS OF REVIEW

We review a trial court's decision following a bench trial to determine whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. *Herring v. Pelayo*, 198 Wn. App. 828, 832, 397 P.3d 125 (2017). Unchallenged findings of fact are verities on appeal. *Id*. at 833. We then review the trial court's conclusions of law de novo to determine if they are supported by the findings of fact. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013), *review denied*, 179 Wn.2d 1011 (2014).

We use a two-step inquiry when reviewing an award of attorney fees. *Bill & Melinda Gates Found. v. Pierce*, 15 Wn. App. 2d 419, 446, 475 P.3d 1011 (2020), *review denied*, 197 Wn.2d 1006 (2021). First, we review the legal basis for awarding attorney fees de novo. *Id.* at 446-47. Second, we review the decision to award attorney fees and the reasonableness of the attorney fee award for an abuse of discretion. *Id.* at 447.

B.    JUBITZ'S APPEAL

Jubitz makes various arguments that the trial court erred because the RPAs could not have been considered within the recorded chain of title of the northern property and that the failure to properly identify the parcels in the RPAs renders them void on their face. We hold that regardless of whether the RPA's were within the chain of title or the parcels were properly identified, the RPA's were void.

An easement is a property right that is separate from an ownership right and allows one to use another's land without compensation. *Johnson v. Lake Cushman Maint. Co.*, 5 Wn. App. 2d 765, 778, 425 P.3d 560 (2018). Because the RPAs allows Vancouver Hospitality to use the Jubitz property without compensation to Jubitz, the RPAs are a form of an easement. However, one cannot have an easement in his or her own property. *Id*; *see also*, *Coast Storage Co. v. Schwartz*, 55 Wn.2d 848, 853, 351 P.2d 520 (1960).

Here, the trial court's unchallenged findings show that at the time the RPAs were recorded, "the Holmstroms continued to own the original parcel as a single property." CP at 2120. One cannot have the same rights twice in the form of an ownership interest and an easement interest. *See* 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.12, at 120 (2d ed. 2004) ("[A]n owner, whose title encompasses all the rights included within the easement, simply cannot own the same rights twice."). Therefore, because the Holmstroms owned both parcels of property at the time the RPAs were recorded, no valid easement was created. *Johnson*, 5 Wn. App. 2d at 778; *see also M.K.K.I., Inc. v. Krueger*, 135 Wn. App. 647, 659, 145 P.3d 411 (2006) ("[W]hen the dominant and servient estates of an easement are commonly owned, the easement is extinguished because a person cannot have an easement in his

or her own property."), *review denied*, 161 Wn.2d 1012 (2007). Accordingly, we hold that the undisputed findings show that the RPAs are void, and reverse the trial court's rulings reforming and enforcing the RPAs.

## C. HOLMSTROMS' CROSS-APPEAL[3]

### 1. Attorney Fees For Breach Of Warranty Of Quiet Enjoyment

The Holmstroms argue that Jubitz waived the right to monetary damages for breach of the lease because the lease contained an exclusive remedy provision. We agree.

In its commercial lease with Jubitz, the Holmstroms made the following relevant representations in paragraph 5(c)(iv):

> To the Knowledge of Landlord, no Person, other than Landlord and the respective Seller, has a present or future right to possession of all or any part of the Premises.

CP at 15. And in paragraph 10(l), the commercial lease states:

> Quiet Enjoyment. Landlord represents and warrants that Tenant, on paying the rents and observing and keeping all covenants, agreements, and conditions of this Lease on Tenant's part to be kept, shall quietly have and enjoy the Premises during the Term without hindrance or molestation by anyone, subject, however, to the exceptions, reservations, and conditions of this Lease.

CP at 28. The commercial lease also contained the following clause in paragraph 5(d):

> No Other Representations. Except as provided in this Lease, no representations, statement, or warranties, express or implied, have been made by or on behalf of either party in respect to the Premises and the Improvements. . . . . Tenant's sole and exclusive remedy for Landlord's breach of any representation or warranty in this Lease will be to terminate this Lease.

CP at 15-16.

---

[3] To the extent the Holmstroms' arguments in their cross appeal relies on the existence of valid RPAs, we do not address them because we hold that the RPAs are invalid.

The warranty of quiet enjoyment protects the possession of property and guarantees that the person entitled to possession will not be actually or constructively evicted under a paramount title. *Foley v. Smith*, 14 Wn. App. 285, 290-91, 539 P.2d 874 (1975). In the commercial lease, the traditional warranty of quiet enjoyment is contained in the Holmstroms' representation that no person "has a present or future right to possession of all or any part of the Premises." CP at 15. "An easement is a *nonpossessory* right to *use* the land of another." *McColl v. Anderson*, 6 Wn. App. 2d 88, 92, 429 P.3d 1113 (2018) (emphasis added). An easement cannot violate the general warranty of quiet enjoyment because it does not interfere with possession.

But the commercial lease also contains a second warranty of quiet enjoyment which specifically guarantees that Jubitz "shall quietly have and enjoy the Premises during the Term without hindrance or molestation by anyone." CP at 28. Although contained in the "Miscellaneous" section of the lease, the provision specifically states that "Landlord represents and warrants . . ." CP at 28. Thus, while the RPAs did not interfere with Jubitz possession of the property, Vancouver Hospitality's use the northern property for parking caused Jubitz annoyance and inconvenience. Because annoyance and inconvenience is a hindrance to Jubitz's enjoyment of the Premises, the trial court correctly concluded that the Holmstroms breached the lease agreement.

The lease agreement clearly states that Jubitz's "sole and exclusive remedy for Landlord's breach of any representation or warranty in this Lease will be to terminate this Lease." CP at 16. Because the Holmstroms violated a representation and warranty in the lease, Jubitz's "sole and exclusive remedy" is termination of the lease. CP at 16. Thus, Jubitz was not entitled to damages for any reduction of value of the lease; Jubitz's only remedy was to terminate the lease agreement.

Therefore, we hold that the trial court erred in concluding that Jubitz did not waive the ability to seek monetary damages.

    2.    Damages Based On No Clear Title Under The PSA

The Holmstroms argue that Jubitz waived its right to seek monetary damages under the terms of the PSA. The Holmstroms also argue the trial court erred in awarding Jubitz prospective damages as a purchaser of the property. We agree.

The PSA provided:

> 7.6    *Notice of Developments.*    The Sellers will give prompt written notice to the Buyer of any adverse development occurring after the Effective Date which would result in a Closing Date Representation and Warranty being materially inaccurate effective as of the Closing Date. If any Closing Date Representation and Warranty will be inaccurate due to any adverse development between the Effective Date and the Closing Date, the Buyer shall have no obligation to consummate the Closing, but (provided that the Sellers have properly notified the Buyer pursuant to this Section 7.6), if the Buyer elects to waive (or is deemed to waive) the inaccuracy of the Closing Date Representation and Warranty, the Closing Date Representation and Warranty shall be deemed to be amended, qualified, supplemented and corrected by the information contained in the notice for purposes of the Closing Date Representations and Warranties. Within five (5) business days of receipt of notice from any of the Sellers of any event resulting in any Closing Date Representation and Warranty of the Seller becoming inaccurate, the Buyer must either elect to terminate this Agreement, or the Buyer will be deemed to have waived the inaccuracy of such Closing Date Representation and Warranty for all purposes. If any Effective Date Representation or Warranty is inaccurate as of the Effective Date and the Closing Date, the Buyer shall have no obligation to consummate the Closing, but if the Buyer elects to consummate the Closing, the Buyer will not be deemed to have waived the inaccuracy of such Effective Date Representation and Warranty and may pursue any remedy available under applicable law.

CP at 42-43.

Section 7.6 provides the terms in case one of the Holmstroms representations or warranties becomes inaccurate prior to the date of closing. The Holmstroms were required to give Jubitz

11

notice of the inaccuracy, after which Jubitz has 5 days to decide to terminate the agreement or waive the inaccuracy.

Here, Jubitz undisputedly received notice of the RPAs, which were not previously disclosed and affected the property's title, and, rather than terminate the PSA, Jubitz decided to pursue this legal action. Because Jubitz became aware of the RPAs prior to the closing date, the terms of the PSA do not allow for monetary damages. Instead, Jubitz's remedies prior to closing are either to terminate the PSA or to waive the inaccuracy and close under the terms of the PSA. The PSA does not allow for damages in the amount of the reduction of fair market value, especially when Jubitz has not yet paid the purchase price under the terms of the PSA. Accordingly, we hold that the trial court erred in awarding Jubitz damages for the reduction of the fair market value of the purchase price under the PSA.

The trial court erred in awarding damages to Jubitz. Therefore, we reverse the trial court's damages award to Jubitz.

3.      Attorney Fees And Costs

The Holmstroms argue that the trial court erred by awarding Jubitz costs and attorney fees because Jubitz was not the prevailing party. We reverse the trial court's award of attorney fees.

Both the lease and the PSA allow for an award of attorney fees to the prevailing party in an action under either agreement. "A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." *Hwang v. McMahill*, 103 Wn. App. 945, 954, 15 P.3d 172 (2000), *review denied*, 144 Wn.2d 1011 (2001).

Here, because we reverse the trial court's ruling regarding damages, we also reverse the award of attorney fees to Jubitz.

## ATTORNEY FEES ON APPEAL

Jubitz requests attorney fees on appeal under the RPAs, the lease, and the PSA. Vancouver Hospitality also requests attorney fees on appeal under the terms of the RPAs.

RAP 18.1 provides for an award of attorney fees on appeal, "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." "A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." *Hwang*, 103 Wn. App. at 954.

Here, because we hold that the RPAs are invalid, Jubitz is the prevailing party in its appeal. However, the Holmstroms' also prevail on their cross-appeal on the issue of damages. Therefore, Jubitz cannot be considered the prevailing party under the lease or the PSA and we decline to award Jubitz attorney fees on appeal. Further, because we hold the RPAs are void, Vancouver Hospitality cannot recover attorney fees under the RPAs.

We hold that the RPAs are invalid, and therefore, reverse the trial court's order reforming the RPAs and awarding Jubitz damages and attorney fees, and remand for further proceedings consistent with this opinion.

No. 53256-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.P.T.